HUBNALL
*v.*
WATT.

---

SUCCESSION OF HENRY FLETCHER, f. m. c., CELESTE BAHAM et al. *v.* JOSEPH DECOUDREAU, Administrator.

The children and grandchildren of a natural aunt of the deceased are not entitled to the estate—there being no statute authorizing them to set up such an illegitimate relationship as a basis for the right of inheritance, which is the creature of positive law. Code 911, 915, 917, 923.

In an act of manumission before a notary and two witnesses, the deceased described M. L. as his "natural daughter slave." This is a sufficient acknowledgment of paternity, although the object of the act was to enfranchise the slave.

No form is prescribed for such an acknowledgment, except that the declaration be made in the presence of a notary and two witnesses. (Code 221.) If the declaration be thus made, it seems immaterial whether it be the main object of the act or not.

Natural children are not like legitimate heirs seized of the succession at the instant the ancestor dies. They have only a right of action to cause themselves to be put in possession upon a proper showing. Code 919, 943.

The State claimed the succession, charging that M. L. was an adulterous bastard; to the evidence of which she objected, under Article 968 of the Code, which provides that "the exclusion [from the inheritance], either for cause of incapacity or unworthiness, shall not be sued for by others than the relations who are called to the succession of the unworthy heir," &c. *Held:* The State is not suing to exclude M. L. under any of the pretences contemplated in Article 968. She is an actor seeking by proof to have herself recognized as heir. She must, therefore, make out her case like other plaintiffs, and, when apparently made out, it is open to be rebutted.

If the act upon which she bases her claim to the heirship be a nullity, she cannot be put in possession of the estate; and the act is a nullity if made in contravention of Article 222 of the Code, which prohibits the acknowledgment of children the offspring of an adulterous or incestuou intercourse.

This prohibition would be futile if the State could not insist on the inquiry whether the acknowledged child was an incestuous or adulterous bastard—for such a bastard can only exclude the State. C. C. 477, 1184, 1185, 1186, 1202, 1203.

APPEAL from the Second District Court of New Orleans, *Morgan*, J. *Collins*, for plaintiffs. *Culbertson*, for defendant. *A. Hennen*, for testamentary executor. *Morse*, Attorney General, and *Miller*, for the State. *Filleul* and *Tissot*, for intervenor.

SPOFFORD, J. (MERRICK, C. J., absent.) *Henry Fletcher*, f. m. c., died in New Orleans, leaving a succession inventoried at about $10,000.

One *Joseph Découdreau* was appointed administrator, and took possession of the effects in that capacity. After a time an olographic testament was discovered, in which *Fletcher* had appointed one *Jean Louis Dolliole* his executor. The will being probated, *Dolliole* was confirmed as testamentary executor, and now represents the succession.

The death of the legatees prior to that of the testator involved the caducity of the main dispositions of the will. So the property must follow the general law of successions *ab intestate*.

Three parties claim the inheritance:

I. The *Bahams*, and others styling themselves the cousins of the deceased.

II. *Marie Louise*, f. w. c., styling herself the duly acknowledged natural child of the deceased.

III. The State.

The prayer of the first claimants must be rejected, because they are the children and grandchildren of a natural aunt of the deceased, and there is no statutory provision authorizing them to set up such an illegitimate relationship as a basis for the right of inheritance, which is the creature of positive law. C. C. 911, 915, 917, 920; *Sayre* v. *Pasco*, 5 R. 9; *Bevens* v. *Dupré*, 6 An., 494.

The only remaining question is whether *Marie Louise* shall take in preference to the State.

*Henry Fletcher*, in an act of manumission passed before a notary and two witnesses, described *Marie Louise*, whom he enfranchised by the act, as his "natural daughter slave." It is contended that this is an insufficient compliance with Article 221 of the Civil Code, which declares that "the acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public in presence of two witnesses, whenever it shall not have been made in the registering of the birth or baptism of such child."

It is said that the words "*natural daughter* slave" were terms of description foreign to the purpose of the act which was to manumit a slave, and not to acknowledge her paternity.

But no form is prescribed for such an acknowledgment, save only that the declaration be made before a notary public, in presence of two witnesses. If the declaration be thus made, it seems to be immaterial whether it be the main object of the act or not. "La seule condition requise c'est qu'elle soit constatée dans un acte authentique. Ainsi, peu importe par quel officier cet acte est dressé, et peu importe aussi que la reconnaissance, au lieu d'être l'objet direct de l'acte, ne s'y trouve que par énonciation incidente." 2 *Marcadé*, p. 91.

*Marie Louise* having exhibited the act in which she was described by *Henry Fletcher* as his natural daughter, maintains that her heirship is thereby established conclusively as against the State, and that neither the State nor the executor in possession of the property can be heard to show by any extraneous evidence the existence of facts which would cut her off from the inheritance.

On the other hand, both the executor and the State offered and were permitted to show that, if *Marie Louise* was the daughter of *Fletcher*, she must have been the offspring of an adulterous connection. C. C., 201.

Upon this fact the proof is conclusive.

So the only question is, was the evidence admissible?

*Marie Louise*, the appellant, relies upon the Article 968 of the Civil Code as implying a *fin de non recevoir*, which bars the State and the executor from entering into any such investigation as was permitted in the court below.

"The exclusion, either for cause of incapacity or unworthiness, shall not be sued for by others than the relations who are called to the succession of the unworthy heir, or in concurrence with him; and this kind of suit shall be determined in the same manner as other civil actions."

This article must be construed not alone, but in connection with the subject-matter of the chapter in which it is found, and with reference to various other provisions in different parts of the Code.

Natural children are not, like legitimate heirs, seized of the succession at the instant the ancestor dies. They have only a right of action to cause themselves to be put in possession upon a proper showing. " Children called to the succession of their natural father or mother, in the case mentioned in the preceding articles, are permitted to take possession of the succession which has fallen to them only by the order of the judge of the parish in which the succession is opened." C. C., 919.

Natural children, and the surviving husband or wife, before being put into possession of the estate left to them, are not considered as having succeeded to the deceased from the instant of his death ; but they do not the less transmit their rights to their heirs, if they die before having made their demand to be put in possession. The reason is, that this sort of heirs, having only a right of action to cause themselves to be put into possession of successions thus falling to them, this right and this action form a part of the succession which they transmit to their heirs." C. C., 943.

*Marie Louise* is not, then, in the posture of a defendant with a legal possession which is attacked by the State; but she is an actor seeking by proof to get herself recognized as an heir to an inheritance which cannot be given her without establishing her heirship. The State is not suing to exclude her under any of the pretences contemplated in Article 968 of the Code.

She must, therefore, make out her case, like other plaintiffs, and when apparently made out it is open to be rebutted. She cannot hold up the act which merely describes her as the " natural daughter" of *Henry Fletcher*, and then say to the other parties, "you shall not look beyond this paper, to see whether I am such a natural daughter as the law permits to inherit from her natural father."

If the act upon which alone she bases her claim is itself a nullity, it would be absurd to say that she should be put in possession of the estate she sues for. That it is a nullity the evidence objected to abundantly shows. It was made in contravention of a prohibitory law established in the interest of public morals. " Such acknowledgment shall not be made in favor of the children produced by an incestuous or adulterous connection." C. C., 222.

To say that evidence cannot be brought *aliunde* to show facts which would establish the adulterous connection of which the child was the fruit, would be to nullify the article of the Code altogether. For it is not to be expected that the father, in acknowledging a natural daughter, would go so far as to thwart his own design by proclaiming his infamy before the notary and witnesses.

The appellant invokes the Article 913 of the Code: " Natural children are called to the inheritance of their natural father, who has duly acknowledged them, when he has left no descendants, nor collateral relations, nor surviving wife, and to the exclusion only of the State. In all other cases they can only bring an action against their natural father, or his heirs, for alimony, the amount of which shall be determined as is directed in the title of father and child."

But the next article provides that " bastard, adulterous or incestuous children shall not enjoy the right of inheriting the estates of their natural father or mother, in any of the cases above mentioned—the law allowing them nothing more than mere alimony."

A futile prohibition, if the fact of their being bastard, adulterous or incestuous children cannot be inquired into on the suggestion of the State. For they

could exclude no one but the State, and it is not to be presumed that they will themselves disclose the fact of their infamous origin, to defeat their own pretensions.

But we are not left to inference upon this subject. For the sake of enforcing the penalties it imposes upon immorality, the Code has declared, in Article 225, that "every claim set up by natural children may be contested by those who have any interest therein."

That the State has an interest in defeating the unlawful pretensions of *Marie Louise* in this case is obvious, under the testimony which shows that there are no legitimate heirs or surviving wife.

We therefore think the evidence was rightly admitted, and that upon the record, as it stands, the succession will belong to the State. C. C. 477, 923.

The decree, so far as it rejects the demands of the *Bahams* and of *Marie Louise*, is correct.

But there was error in decreeing the property to be forthwith delivered to the Attorney General. There appear to be unpaid debts, and, in a succession of this kind, the Code seems to contemplate that all the movable and immovable property should be sold, the latter after appraisement and on prescribed terms of credit, that the balance, on the homologation of a final account, may be paid over in money to the State Treasurer, who is authorized to receipt therefor. C. C. 1202-3, 1184-5-6.

The answer of the executor to the appeal prays for an amendment accordingly.

It is therefore ordered that the judgment rejecting the claims of *Baham et als.*, and of *Marie Louise*, intervenor, to inherit from *Henry Fletcher*, be affirmed. It is further ordered that the judgment in other respects be reversed, and that the administration of the succession of *Henry Fletcher* be continued, according to law, until the succession is finally wound up ; and it is further ordered that the costs of this appeal be paid by *Marie Louise*, the appellant.