(77 South. 497)

No. 22550.

Succession of LACOSST.

(Nov. 26, 1917.   Rehearing Denied Jan. 3, 1918.)

*(Syllabus by the Court.)*

1. BASTARDS ⚫⇒104—INHERITANCE BY MOTHER—CONDITIONS PRECEDENT.

The mother of an illegitimate son, who has died without posterity, does not inherit his es-

142 LA.—22

tate unless the child was legally acknowledged by her, either in the registering of the birth or baptism of the child, or by a declaration made before a notary public in presence of two witnesses, as required by article 203 of the Civil Code.

2. DESCENT AND DISTRIBUTION ⚫⇒71(3)—SUCCESSION — RIGHT OF INHERITANCE — OBJECTION—STATUTE.

The provisions of article 974 of the Civil Code, that the exclusion of an heir, either for cause of incapacity or unworthiness, shall not be sued for by others than the relations who would inherit the estate on proof of the incapacity or unworthiness, must be construed with reference to other provisions of the Code that are applicable to a given case. The article cannot be construed to mean that a legatee who is not a relation of the testator cannot question the capacity or right of inheritance of one who claims the estate in the capacity of heir at law of his or her deceased illegitimate child.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

In the matter of the succession of Eugène Lacosst. Action by Mrs. Jeanne Lepine Lacosst against Emile Pomes, testamentary executor, and others. On the death of plaintiff, Berthe Lacosst Heinisch was substituted as plaintiff. From a judgment in favor of the defendants rejecting plaintiff's demands, she appeals. Affirmed.

See, also, 139 La. 837, 72 South. 373.

Armand Romain, of New Orleans, for appellant. A. V. Coco, Atty. Gen., for appellee Charity Hospital. Walter L. Gleason, of New Orleans, for appellee E. Pomes, Ex'r. Hall, Monroe & Lemann and W. K. Leverich, all of New Orleans, for appellee Eye, Ear, Nose and Throat Hospital. I. D. Moore and J. F. C. Waldo, both of New Orleans, for appellee City of New Orleans. James J. McLoughlin, of New Orleans, for appellee the Little Sisters of the Poor, Uptown and Downtown. A. D. Danziger, of New Orleans, for appellee Isaac Delgado Museum of Art. A. D. Danziger and Felix J. Puig, both of New Orleans, for appellee New Orleans City Park Improvement Ass'n. J. M. Sheridan, of New Orleans, for appellees remaining special legatees.

O'NIELL, J. Eugène Lacosst died in New Orleans on the 28th of March, 1915, leaving an estate, consisting of both real and personal property, valued at $187,228.

He left an olographic will, written in the French language, dated the 27th of June, 1914, disposing of all his property. He bequeathed to his mother the sum of $1,000 and the usufruct during her lifetime of the property No. 937 St. Louis street, in New Orleans. He gave special legacies of sums of money and of property to several individuals, his collection of bronze and marble statuary and an antique mirror to the Delgado Museum of Art, and legacies of sums of money to a number of charitable institutions in ·New Orleans. He appointed Emile Pomes, to whom he bequeathed $5,000, testamentary executor, without bond. The testament contains the following concluding stipulations and provisions, which form the basis of the present suit, and are translated, thus:

"I want that, after all these gifts which I bequeath are settled, that all my property be sold, which consists of premium bonds and all the mortgages which I possess be sold, and after to make a pension to my mother during her lifetime of fifty dollars ($50.00) per month until her death. Then to build for me a tomb in white marble which will cost not less than twenty-five thousand dollars ($25,000), for the last abode of myself and my mother, and give strict instructions that nobody else ·be buried in that tomb except myself and my mother. After, I charge Mr. Pomes to take care of the sale of those properties and to create a fund from the balance which will assure the amount which I give to my mother during her lifetime. And after that he will be able to distribute the balance between the institutions which I have mentioned above, that is to say, give half of the amount which will remain to the Charity Hospital, then the other half to be distributed between the other institutions.

"I dare hope and do hope that my last wishes will be executed as my vows, they are my last desires, and there is no one who can put opposition to my last wishes."

The deceased had no descendants; in fact, he was never married.

When the will had been admitted to probate, Mrs. Jeanne Lepine Lacosst, widow of Jean Marie Lacosst, alleging that she was the mother of the deceased, Eugène Lacosst, brought suit against the executor, and the Charity Hospital of New Orleans as residuary legatee, and against all the legatees named in the will, to have the instrument decreed null, or, in the alternative, to have herself decreed to be the forced heir of the deceased, entitled to the légitime of one-third of his estate, and to have the dispositions to all other legatees reduced to the disposable portion. The causes for which she contested the legality of the testament were, first, that the instrument was ambiguous, the provisions being conflicting and impossible of execution; second, that the clauses directing the executor to sell the property of the estate and create a fund to insure the payment of a pension to the testator's mother during her lifetime, and, at her death, to divide the estate among the residuary legatees, was a prohibited substitution, which rendered the entire will null; third, that, if the clauses referred to did not amount to a prohibited substitution, they constituted a fidei commissum, and the bequests to the residuary legatees were therefore null; and, fourth, that the clause directing the executor to build a tomb to cost *not less than* $25,000, if valid, would give the executor authority to dispose of the entire estate for that purpose, and would amount to a committing of the disposition of the estate to the choice of a third party, in violation of an express provision of the Civil Code. The prayer of the petition was, first, that the will be decreed null, and that the plaintiff be decreed entitled to the entire estate of her son, as his heir at law; second, in the alternative, in the event the court should hold that the will did not contain a prohibited substitution and was not entirely null, then that the dispositions in favor of the residuary legatees be decreed null, and that the plaintiff recover the property bequeathed to them; third, in

the alternative, and in the event the will should be decreed valid, then that the plaintiff be recognized as the forced heir of her deceased son, and, as such, entitled to the légitime of one-third of his estate; and, fourth, in the alternative, and in the event the will should be decreed valid, then that she be allowed the sum of $25,000 to be disposed of for the erection of a tomb for her deceased son.

The defense to the suit was threefold: First, that the deceased, Eugène Lacosst, was an illegitimate son of the plaintiff and had never been acknowledged in either of the forms prescribed by law, and that the plaintiff was therefore not his heir at law and had no interest in contesting his will; second, that, if the plaintiff had a right to contest the will, she waived that right, and was estopped from making the contest, by collecting and accepting from the executor regularly every month after the death of the testator the pension of $50 a month provided for her in the will, and by collecting and retaining each month the rent of the property of which she was given the usufruct by the will; third, that the will did not contain a prohibited substitution or fidei commissum, and that, if any of the stipulations were illegal or impossible of execution, they alone should be regarded as not written.

Judgment was rendered against the plaintiff; and, on appeal to this court, it was found that the plaintiff had, at the beginning of the trial, discontinued her suit against the Charity Hospital, or its board of administrators, and that the other legatees named in the will had not made an appearance in the case. For that reason a judgment of nonsuit was rendered against the plaintiff. See Succession of Lacosst, 139 La. 837, 72 South. 373.

The plaintiff renewed her suit in the district court, on substantially the same allegations that were made in the original suit.

Before the defendants had answered the second suit, the plaintiff died; and her daughter, Mrs. Berthe Lacosst Heinisch, being the heir at law of Mrs. Jeanne Lacosst, was, on her own petition, made plaintiff in the suit. The defenses to her suit are the same that were urged to the original suit of her mother. The entire record including the testimony in the first suit was introduced in evidence on the trial of the second suit. Judgment. was rendered in favor of the defendants, rejecting the plaintiff's demands, and she prosecutes this appeal.

## Opinion.

[1] The first question to be determined is whether the plaintiff has any interest in contesting the will of Eugène Lacosst; and that depends upon whether the plaintiff would inherit his estate if his will should be decreed null. The right of inheritance is a gift of the law, and it does not give to a father or mother the right to inherit the estate of his or her *unacknowledged* illegitimate child. Therefore, if the deceased, Eugène Lacosst, being an illegitimate son of the original plaintiff in this suit, was not an *acknowledged* child, or *natural* child, within the meaning of the law, and if his mother was therefore not his heir at law, that is the end of this case.

On that question there is no dispute about the facts. On the first trial, Mrs. Jeanne Lacosst, as the first witness in her own behalf, testified that her son, Eugène, was born eight years before she was married. Her attorney then objected to the question asked her on cross-examination, who was the father of her son, Eugène Lacosst, on the ground that none of the defendants were relations of the deceased, and that, under a provision of the Civil Code, no one could demand the exclusion of an heir, either for incapacity or unworthiness, except a relation who would inherit the estate on proof of such incapacity or unworthiness. The objection being over-

ruled, the plaintiff answered that one Fabian Pradere was the father of Eugène Lacosst. She admitted that she was never married to Fabian Pradere, but said that there was no legal obstacle to a marriage between them. She said that her son was born in Mane, France; that she had his birth registered there, and had him baptized in her name—that is, as Eugène Charles Lepine. She produced a certificate of registry of the birth, which is translated from the French as follows, viz.:

"City Hall of Mane—(Haute-Gne). Abstract of the Registers of the State Civil Status of the Town of Mane, of the 28th day of the month of May, one thousand eight hundred and fifty-four, at four o'clock of the evening.

"Act of the birth of Eugène Charles Lepine, born this day at ten o'clock in the morning, son of Jeanne Lepine, workwoman, residing at Mane, and father unknown. The sex of the child has been declared to be male.

"First witness: Lepine Antoine, age fifty-four years, profession wheelwright, residing at Mane.

"Second witness: Chas. Bernard, age forty-two years, profession locksmith, residing at Mane.

"At the requisition made to us by Chraufrau Rose, midwife.

"Due reading of the present act was made by us to the appearing parties and to the witnesses, who declared that they did not know how to sign.

"Attested by me in accordance with law. [Signed] Bordes, Jules, Mayor of Mane, performing the duties of public official of civil status."

Mrs. Lacosst also testified that she came from France to this country in the year 1860, that is, when her son was six years old, and that she was married to Jean Marie Lacosst, in New Orleans, on the 20th of August, 1862. It appears that the son, Eugène, came from France to New Orleans several years later, and took up his residence with his mother and her husband. He immediately assumed the name Eugène Lacosst, and was known only by that name in New Orleans. His mother always addressed him and referred to him as her son, and he always addressed her and referred to her as his mother. In fact, he was generally regarded in the community as the son of Mrs. Lacosst. She and her husband were illiterate, but the son, Eugène, acquired some education; and when he traveled he wrote to his mother, addressing her, "My Dear Mother." Some time after coming to New Orleans he established a hair dressing business in Royal street, and took up his residence in the establishment, away from his mother and her husband. The latter died about 20 years before Eugène Lacosst died, and he immediately provided another home for his mother and resided there with her until his death.

Under the facts stated above, the plaintiff relies upon article 922 of the Civil Code, in the chapter "Of Irregular Successions," viz.:

"The estate of a natural child deceased without posterity, belongs to the father or mother who has acknowledged him, or in equal portions to the father and mother, when he has been acknowledged by both of them."

The learned counsel for the plaintiff contends, first, that the certificate of registry of the birth of Eugène Lacosst, as Eugène Charles Lepine, furnishes proof that his mother acknowledged him to be her son; and, in the event that it be held not to be an acknowledgment in the form prescribed by law, then that the proof of his maternal descent, and of his mother's recognition of him as her son, has the same legal effect as if she had acknowledged him in an act executed before a notary public in the presence of two witnesses.

The section of the Civil Code treating "Of the Acknowledgment of Illegitimate Children" contains the following provisions, viz.:

"Art. 202 (220). Illegitimate children who have been acknowledged by their father are called natural children; those who have not been acknowledged by their father, or whose father and mother were incapable of contracting marriage at the time of conception, or whose father is unknown, are contradistinguished by the appellation of bastards.

"Art. 203 (221). The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the father and mother,

or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child."

Mrs. Lacosst testified that Fabian Pradere, who, she said, was the father of her illegitimate child, died in France; and there is no evidence nor allegation that he ever acknowledged, in any manner whatever, that he was the father of the child. Therefore, according to the definition contained in article 202 of the Civil Code, Eugène Charles Lepine, or Eugène Lacosst, was not of that class of illegitimate children "called natural children," but was of that class "who have not been acknowledged by their father," and who "are contradistinguished by the appellation of bastards." The plain language of the law is that an illegitimate child is a bastard, not a *natural child*, within the legal meaning of the term, if he has not been acknowledged by his father, even though the paternity be proven or known, and even though there was no legal impediment to a marriage between his parents at the time of conception. In other words, according to the definition in the Code, a bastard is (1) an illegitimate child who has not been acknowledged by his father, or (2) one whose father and mother were incapable of contracting marriage at the time of conception, or (3) one whose father is unknown.

It must be borne in mind that article 922 of the Code, on which the plaintiff relies, does not provide that the estate of *any* illegitimate child who dies without posterity shall belong to the father or mother who has acknowledged him, but that the estate of a *natural* child who dies without posterity shall belong to the father or mother who has acknowledged him. For the definition of a *natural* child, we turn to the chapter that treats "Of Illegitimate Children," and to article 202, which classifies illegitimate children into two grades, viz.: (1) Those who have been acknowledged by their father, and are therefore called *natural children*, and (2) those who have not been acknowledged by their father, *or* whose father and mother were incapable of contracting marriage at the time of conception, *or* whose father is unknown, and who are contradistinguished by the appellation of *bastards*.

There is an apparent conflict between article 202 and article 922 of the Civil Code, in this: that, under the definition in article 202, an illegitimate child is not a natural child unless he has been acknowledged by his father; whereas it might be inferred from the language of article 922 that the mother would inherit the estate of her illegitimate child (who died without posterity), as her natural child, if she alone had acknowledged him. The language of the latter article is that the estate of a natural child deceased without posterity belongs to the father *or* mother who has acknowledged him, or in equal portions to the father and mother when he has been acknowledged by both of them. If the definition in article 202 of a natural child is to control the meaning of the term "natural child," as used in article 922, the mother could not inherit the estate of her illegitimate child (deceased without posterity), even though she had legally acknowledged him, unless the father also had acknowledged him, because the illegitimate child would be a bastard, not a natural child, unless the father had acknowledged him; and it is only a natural child—not a bastard, or illegitimate child whose father has not acknowledged him—whose estate can be inherited by the parent who has acknowledged him.

Assuming, however, for the purpose of deciding this particular case, that a mother who has acknowledged an illegitimate child to be her own may inherit the estate of the child (deceased without posterity), even though the child was never acknowledged by his father and was therefore not a natural child, we come to the question whether the mother

in this case did acknowledge her illegitimate child in the manner required by law to allow her to inherit his estate.

Article 203 of the Civil Code does not declare that the mere fact that the father or mother of an illegitimate child has had the child baptized, or had the birth recorded, shall be such an acknowledgment as to change the legal status of the illegitimate child from that of a bastard to that of a natural child, and entitles the parent so acknowledging the child to inherit his estate if he dies without posterity. What the law requires for the acknowledgment of an illegitimate child, to have the legal effect, of making him a natural child, within the meaning of article 922 of the Code, is that the acknowledgment shall be made either in the registering of the birth or baptism of the child, or by a declaration executed before a notary public in the presence of two witnesses.

It is conceded in this case that the mother did not acknowledge her illegitimate child by a declaration before a notary public and two witnesses. It is not contended that she made a formal acknowledgment in the registering of the birth or baptism of the child. In fact, there is no evidence that there was a registering of the baptism. The only evidence on that subject is the testimony of the mother that she had the child baptized in her name; that is, as Eugène Charles Lepine. To hold that the mere fact that the mother of an illegitimate child had the child baptized as her own or in her name is equivalent to a formal acknowledgment in the registering of the baptism would be to ignore the provisions of article 203 of the Code on that subject.

There is no evidence that the mother in this case acknowledged her illegitimate child in the registering of his birth. It does not appear that she was present at the registering of the birth of the child. On the contrary, from the fact that the birth was registered at the city hall by the midwife on the day the child was born, and that the paternity of the child was recorded as "unknown," it may well be presumed that the mother was not present during the observance of those formalities at the city hall. It would indeed be a dangerous doctrine to hold that the declaration of a midwife, having the birth of an illegitimate child recorded, as to who was the father or mother of the child, is equivalent to an acknowledgment of the paternity or maternity on the part of the person named by the midwife. Our conclusion is that the mother, in this case, did not make an acknowledgment of her illegitimate son in either of the forms prescribed in article 203 of the Code.

We come then to the question whether proof of maternal descent should have the same effect, of changing the status of a bastard to that of a natural child, and allowing the mother of the illegitimate child to inherit his estate under article 922 of the Code, as if the illegitimate child had been acknowledged by the mother in one of the forms prescribed in article 203. In support of his contention in that respect, the learned counsel for the plaintiff cites the decisions rendered in the following cases: Lange v. Richoux, 6 La. 560; Hart, Tutrix, v. Hoss & Elder, Administrators, 26 La. Ann. 90; Succession of Fortier, 51 La. Ann. 1562, 26 South. 554; Bourriaque v. Charles, 107 La. 217, 31 South. 757; and Succession of Vance, 110 La. 760, 34 South. 767.

In the last of the cases cited, i. e., Succession of Vance, the previous decisions, holding that proof of paternal descent was equivalent to a legal acknowledgment by the father of an illegitimate child, were referred to with disapproval. It was said that the decision in Lange v. Richoux, in Succession of Fortier, and in Bourriaque v. Charles, and others of the same tenor, seemed to rest mainly upon articles 208 and 209 of the Civil

Code, both of which referred to proof of paternal descent rather than to paternal acknowledgment. The court laid stress upon the language of articles 208 and 209, that illegitimate children who have not been legally acknowledged may be allowed to prove their paternal descent (1) by all kinds of private writing, (2) when the father, either in public or in private, has acknowledged the child to be his, or has called him so in conversation, or has caused him to be educated as such, (3) when the mother of the child was known to be living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived. It was said that those provisions of the Code were mere directions for proving paternal descent, which was not the same thing as the acknowledgment by the father; and that it was the *acknowledgment by the father* that converted a bastard into a natural child, and conferred upon him or the parents the right of inheritance relating to natural children. The court found it unnecessary, however, in the Succession of `Vance, either to affirm or overrule the previous decisions holding that proof of paternal descent answers the purpose of an acknowledgment by the father in one of the forms required by article 203 *to convert a bastard into a natural child,* within the meaning of article 922. It is true the author of the opinion used the expression:

"But though we adhere to the jurisprudence authorizing methods of acknowledgment of illegitimate children otherwise than as laid down in Civ. Code, art. 203, it is impossible to hold that what Vance said to the witness, Lee, as hereinbefore set forth, suffices to invest her with the title of a legally acknowledged or natural child."

Our interpretation of the expression is, not that the court did not adhere to the doctrine which was then criticised so unfavorably, but that the author of the opinion meant that, even though the court should adhere to the anomalous doctrine, it had no application to the facts of the case then under consideration. We say anomalous doctrine, because, in a case where one claims under a will, proof of his paternity—that is, proof that he is an illegitimate child of the testator—without proof that he was legally acknowledged by the father, would defeat his *right to receive anything by testamentary disposition from the father.* That was the case in the Succession of Vance. Is it not an anomalous doctrine, then to announce or affirm that proof of paternal descent—a fact which would defeat the right of an illegitimate child to receive anything by testament from his father—is equivalent to a legal acknowledgment by the father, which would entitle the illegitimate child to receive by testament a limited portion of the estate of the father?

Again we find it unnecessary, in the present case, either to affirm or overrule the decision in Lange v. Richoux, Hart v. Hoss & Elder, Succession of Fortier, or Bourriaque v. Charles. They were all cases in which the proof of paternal descent (which was allowed as a substitute for legal acknowledgment by the father of an illegitimate child) was made by or on behalf of the illegitimate child, not on behalf of the parent who had failed or neglected to make the acknowledgment in one of the forms prescribed by law. In the present case, proof of *maternal* descent is offered *on behalf of the mother* and her heir at law as a substitute for legal acknowledgment by her of her illegitimate child, to entitle her, or her heir at law, to inherit the estate of the illegitimate child. Proof of maternal descent, unlike proof of paternal descent, does not consist of proof that the parent acknowledged the illegitimate child. Article 212 of the Code provides that "the child who will make such proof," i. e., of maternal descent, "shall be bound to show that he is identically the same person as the child whom the mother brought forth." The

Code does not provide for proof of maternal descent by or on behalf of the mother. It provides only that illegitimate children themselves may make proof of their maternal descent, provided the mother be not a married woman.

To hold that proof of maternal descent, offered on behalf of the mother, or her heir at law, as in this case, should take the place or supply the want of a legal acknowledgment on the part of the mother. and permit her, or her heir at law, to inherit the estate of her illegitimate child, would transpose the language of article 922 of the Code so as to provide that the estate of an *unacknowledged* illegitimate child (who has died without posterity) shall belong to the mother, on proof merely that the deceased was "identically the same person as the child whom the mother brought forth." Either that would be the consequence, or it would follow that any informal recognition by the mother of an illegitimate child as her own would be a legal acknowledgment, and would convert the bastard into a natural child, within the meaning of article 922, notwithstanding article 203 says that the acknowledgment of an illegitimate child, to have legal effect, shall be made by a declaration executed before a notary public and two witnesses, if it was not made in the registering of the birth or baptism of the child. We cannot maintain the doctrine on which the plaintiff relies without ignoring the requirements of article 203 of the Code, for legal acknowledgment by the mother of an illegitimate child, as if those provisions had been omitted from the Code.

It is true, in the case of Neel v. Hibard, 30 La. Ann. 808, it was held that it was not necessary that an illegitimate child, born of a slave mother, in this state, should have been legally acknowledged by the mother, to enable the emancipated mother to inherit from the child. But that decision stands alone in our jurisprudence. It rests upon the proposition that a slave could not make the declaration before a notary public and two witnesses, as required by the Code. And the decision, after all, turned upon the point that the plaintiff, who sued to annul a judgment sending the mother into possession of the estate of her illegitimate son, was in possession of the property of. the succession as the agent, or wife of the agent, of the deceased illegitimate son of the defendant, and had no interest whatever in seeking to annul the judgment recognizing the defendant as the heir of her deceased illegitimate son.

The decision in Pigeau v. Duvernay, 4 Martin (O. S.) 265, is exactly in point, except that in that case it was the father of the deceased illegitimate child who offered proof of paternal descent, by evidence that he had informally acknowledged the child as his own, as a substitute for an acknowledgment on his part by the method prescribed in the Code. In the registry of the baptism of the child in that case the plaintiff was named as the father of the illegitimate child'; and a record in the court of probates showed that the plaintiff had been, on the application of the child, appointed, and had qualified, as the curator ad bono, as the natural father of the child. From those facts it was held the paternity was sufficiently proven. But, it was said, proof of paternity did not suffice; an acknowledgment, in one of the forms required by the Code, had to be proven, to entitle the plaintiff to inherit the estate of his deceased illegitimate child, under the provision of the Code that "the estate of a natural child, dead without posterity, belongs to the father who has acknowledged him." Strange to say, that decision was cited, as if with approval, in Lange v. Richoux, 6 La. 571, where it was held that the legal acknowledgment of an illegitimate child was not required to be formal. It was cited again and the language of Mr.

Justice Martin was quoted at length with approval in Dupre v. Caruthers, 6 La. Ann. 156, and was distinguished from the case then in hand, but not overruled, in Hart v. Hoss & Elder, 26 La. Ann. 99.

The objection urged by the plaintiff's counsel to the evidence offered by the defendants to prove that Eugène Lacosst was not an acknowledged child, or natural child, is founded upon article 974 of the Civil Code, viz.:

"The exclusion, either for cause of incapacity or unworthiness, shall not be sued for by others than the relations who are called to the succession in default of the unworthy heir, or in concurrence with him; and this kind of suit shall be determined in the same manner as other civil actions."

[2] It is true the legatees in this case are not relations of the deceased, Eugène Lacosst; but they are not suing to exclude the plaintiff for incapacity. She is suing to be recognized as the heir at law of the deceased, and she bears the burden of proof of her capacity or right to inherit. In Succession of Fletcher 'v. Decoudreau, 11 La. Ann. 59, where the plaintiff claimed the estate as the natural or acknowledged illegitimate daughter of the deceased, and produced a declaration made by her father before a notary public and two witnesses, acknowledging her to be his daughter, the state was permitted to prove that the parents were legally incapable of contracting marriage when the plaintiff was conceived, and that she was therefore an adulterous bastard. It was said that article 974, R. C. C. (article 968, C. C.) should be construed not alone but with reference to other provisions of the Code that might be applicable to a particular case. It would lead to an absurdity to hold that a legatee who is not a relation of the deceased testator cannot question the capacity or right of inheritance of a contestant who claims the estate in the capacity of heir. The learned counsel for the plaintiff cites, in support of his objection, the decision in the Succession of Sa-loy, 44 La. Ann. 433, 10 South. 872. The decision has no application whatever to the present case. In that case the state attempted to prove that the widow Saloy, who was born during the marriage of her mother to her reputed father, was an adulterous bastard, by other evidence than a judgment of court, obtained by the husband of the child's mother or by his heirs in an action en desaveu. It was held that the action of disavowal of a child born during the marriage of the mother could be brought only by her husband or his heirs, and only within the time allowed by law. And that, even though the action of the state in that case was neither an action en desaveu nor an action en contestation de légitimité, it was nevertheless an action to bastardize a child born during the marriage of the mother, and the only evidence admissible for that purpose was a judgment of a competent court in an action for disavowal brought by the husband or his heir or heirs. In the opinion, the Succession of Fletcher v. Decoudreau, 11 La. Ann. 59, was distinguished from the case in hand, in that, in the former case the party whose capacity or right to inherit was questioned was not born during the marriage of her mother, and the ruling in that case was affirmed.

Our conclusion is that the plaintiff in this case is not an heir at law of the deceased, Eugène Lacosst, would not inherit his estate if his will should be decreed null, and therefore has no interest in the prosecution of this suit.

The judgment of the civil district court is affirmed at the cost of the appellant.

PROVOSTY, J., concurs on the ground that while the child may prove acknowledgment in a mode other than either of those expressly provided for by the Code, the mother may not.

### Addendum.

O'NIELL, J. The decisions in the following cases, viz., Succession of Gravier, 125

La. 733, 51 South. 704, Succession of Davis, 126 La. 178, 52 South. 266, and Briggs v. McLaughlin, 134 La. 133, 63 South. 851, were not referred to in the argument of this case nor in the briefs filed, either on the original hearing or on the application for rehearing, and they escaped our attention until the opinion had been handed down. What was said on the subject of allowing proof of maternal descent, as a substitute for a formal acknowledgment of an illegitimate child, in the Succession of Gravier and in the Succession of Davis, did not control the decision; because, in each case, the conclusion was that a marriage between the father and mother of the illegitimate child was prohibited by law at the time of conception, and that therefore the status of the child could not have been changed from that of a bastard to that of a natural child by any form of acknowledgment. In Briggs v. McLaughlin the proof of acknowledgment of maternal descent was made by and on behalf of the illegitimate son, not by or on behalf of the mother. The decision is therefore in accord with the opinion expressed by the senior Associate Justice, concurring in the decree in the present case.