No. 9523.

Orleans Appeal.

---

LILLIAN GULLUNG, Appellant, v. DALGARN CONSTRUCTION CO.

---

(November 17, 1924; Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. Louisiana Digest, Bastards and Natural Children, Par. 18.

An adulterous child cannot be acknowledged for the purposes of inheritance nor for the benefits of the Employer's Liability Act.

(Civil Code, Art. 206 and 1488; Art. 20 of 1914, Sec. 8, Sub-Sec. 2 (k) and 2 (m) —Editor's Note.)

2. Louisiana Digest, Laws, Par. 72.

None but an "acknowledged illegitimate child" can reap the benefits of said act.

3. Louisiana Digest, Master and Servant, Par. 160; Bastards and Natural Children, Par. 7.

The incapacity of the parents of an adulterous child, to acknowledge him does not cease by the dissolution of their marriage; but the incapacity exists as long as the law remains in force.
(Civil Code, Art. 203, 204—Editor's Note.)

Appeal from Civil District Court, Hon. Percy Saint, Judge.

This is a suit under the Employer's Liability Act No. 20 of 1914, p. 44. There was judgment for the defendant and the plaintiff has appealed.

Judgment affirmed.

George Piazza, attorney for plaintiff and appellant.

John May, attorney for defendant and appellee.

CLAIBORNE, J. The facts of this case are as follows: The plaintiff, Lillian Gullung, loved, not wisely but too well,· one Ignatius Kruppenbacher, the husband of Barbara Bendix; on January 16, 1915, a son was born unto her, who on the same day was baptized in the Holy Trinity Church and given the name of William Kruppenbacher; that for several years prior thereto the said plaintiff had been cohabiting with Ignatius Kruppenbacher as man and wife and continued to do so up to the time of his death on November 29, 1922; that from the time of the birth of said child to the date of his death Ignatius Kruppenbacher openly and publicly proclaimed and acknowledged the said child William Kruppenbacher to be his own; and helped in his support; that on the day of his death Ignatius Kruppenbacher was employed as a laborer by the defendant, the Dalgarn Construction Co., at $15 per week; that he was engaged on November 29, 1922, in carrying second-hand planks from one place to another; that in dropping a plank the end

flew up and struck him in the neck severing the jugular vein and causing death within an hour afterwards. Petitioner, as the natural mother of her child and on his behalf, claims of the defendants thirty per cent of $15 a week for 300 weeks, or $1,350, and $100 for funeral expenses.

The defendant admitted that the deceased Ignatius Kruppenbacher was employed by it at the wages stated in the petition, that on the day he met his death he was working within the scope of his employment, and that the child was baptized. But it denies all the other allegations of the petition and specially pleads:

"10th. The allegations of Article 10 are denied and defendant says further that at the time of the conception and birth of the minor William Kruppenbacher the said Ignatius Kruppenbacher was married to Barbara Bendix, the marriage having taken place in January, 1909, a judgment of divorce being rendered on the petition of the said Barbara Bendix on June 27, 1922, and that by reason of such existing marriage, no legal acknowledgment would have in any event been possible."

The reasons for judgment were as follows:

"This is a suit for compensation. The only question to be determined is whether or not plaintiff is entitled to compensation under the Act, as all the other allegations of the petition are admitted, the real test being the status of the minor child, William Kruppenbacher, as provided by the Compensation Act. The record shows that the said child was born to plaintiff, Lillian Gullung, and William Kruppenbacher, while Kruppenbacher was married to another woman, which made the child an adulterous bastard. Plaintiff claims that just prior to Kruppenbacher's death, he had secured a divorce from his wife, which fact relieved the illegitimate son of his status as an adulterous bastard. I do not agree with this contention for the reason that the child was conceived and born at a time when the mother and father could not have contracted marriage, and under the plain Article of the Code, the child was an adulterous bastard, and the mere fact that the father of the child subsequently secured a divorce from his wife, could not remove the prohibition fixed by the Article of the Code. Plaintiff further contends that the recognition of Kruppenbacher of this son after he had secured the divorce from his wife, is a sufficient legitimation of the boy to relieve him of the status of adulterous bastard. I do not agree with that contention, either, for the reason that the Article of the Code is very plain and specific. I do not think that the subsequent divorce together with the recognition of the child could relieve him of the status of adulterous bastard; and the Workmen's Compensation Law gives compensation only to legitimate or legitimated children, and this precludes plaintiff from recovering in this case. There should be judgment in favor of defendant dismissing this suit, and it is so ordered."

It will be noted that the learned Judge speaks of "legitimation" and of "legitimated children". This is obviously a careless expression, as there was no question of "legitimating" involved in the case; it was a mere question of acknowledgment." The two, while having some resemblance, are quite different and governed by different Articles.

The question at issue in this case is what "children are beneficiaries under the 'Liability Act', and is plaintiff's child one of them?"

Sec. 8, sub-sec. 2 (k), of Act 243 of 1916, p. 516, reads as follows:

Sec. 8, sub-sec. 2 (k). "Compensation shall be payable under this schedule to or on account of any child, or brother, or sister, or other dependant member of the family not otherwise specifically provided for, only if and while such child, brother, sister or other dependent member of the family not otherwise specifically provided for is under the age of eighteen years (unless such child, brother, sister, or other dependent member of the family is mentally or physically incapacitated from earning a living). * * * The term 'child' and 'children' shall cover only legitimate children or acknowledged illegitimate children, etc."

Sec. 8, sub-sec. 2 (m). The contention of the defendant is that the term "acknowledged illegitimate children" does not mean children who have been merely recognized, admitted and treated as children by the party injured; but that these "children" must have been "acknowledged" in the manner provided by the Civil Code under Articles 202 to 213 and that such "acknowledgment" cannot be made in any manner "in favor of children whose parents were incapable of contracting marriage at the time of conception" as provided by Article C. C. 204.

This Article reads as follows:

"Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception."

In the case of the Succession of Fletcher, 11 La. Ann. 59, the Supreme Court, in passing upon the claims of an adulterous daughter who claimed the succession of her father as heir for having been acknowledged by him as his daughter in a notarial act, said that the act was a nullity, "made in contravention of a prohibitory law established in the interest of public morals." If a notarial act of acknowledgment is a nullity, how much more null and of no effect are mere declarations and other acts?

This decision was quoted approvingly in Succession of Lacost, 142 La. 689; 77 So. 497.

In Succession of Gravier, 125 La. 735; 51 So. 704, the Court said in speaking of white and colored parents: "Had they attempted to acknowledge these children, the act of acknowledgment would have been a nullity beyond all question, etc." See also Compton vs. Prescott, 12 Rob. 71; City of New Orleans vs. Hall, 21 La. Ann. 437.

The meaning of the word "acknowledged" as applicable to illegitimate heirs, was applied to illegitimate parents claiming compensation under the Employer's Liability Act. This is equivalent to saying that illegitimate relations who cannot inherit cannot claim under said Act. In Perkins vs. Brownell, 147 La. 337, the Court said:

"Plaintiffs sue under the Employer's Liability Act of 1914 in damages as heirs of their child who was killed in the course of his employment at defendants' sawmill. The defense is that the child was illegitimate, and had never been acknowledged by either of the plaintiffs. Article 203 C. C. provides:

"'The acknowledgment of an illegitimate child shall be made by a declaration executed before a Notary Public, in presence of two witnesses, by the father and mother, or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child.'

"Defendant contends that the modes of acknowledgment here specified are exclusive; and plaintiff contends that they are not but that a baptism of the child in the presence of the parents as their child, and a declaration of the parents of the federal census, taken of their parentage of the child, is the equivalent of a 'registering of the birth or baptism' of the child. For so holding this Court would have, not to interpret, but to amend, the said Article by recognizing an additional mode of acknowledgment."

The Court denied that acknowledgment and rejected plaintiff's claim.

We therefore conclude that the father and mother of William Kruppenbacher having been, in the language of Article 204 (222) "incapable of contracting marriage at the time of his conception had no right to 'acknowledge' their child within the meaning of Article 202 (220) either for the purposes of inheritance or to claim the benefits of the Employer's Liability Act".

But the plaintiff argues that while it is true that Article C. C. 204 prohibits the acknowledgment of children whose parents were incapable of contracting marriage at

the time of conception, the moment the incapacity of the parents to marry ceases, from that moment they could legally acknowledge their illegitimate offspring; and that from the time Ignatius Kruppenbacher was divorced from his wife Barbara Bendix, he acquired the capacity to marry Lillian Gullung, and as a consequence he could acknowledge their son and that he did so from that time up to the date of his death.

In support of this proposition he relies upon the decision in the Succession of Melame Hebert, 33 La. Ann. 1099. But that case was entirely different from the one under consideration.

Melasie Hebert was a white woman, deaf and dumb. In 1854 she had a child from a colored man. In 1879 she died. The Court held that the child had been acknowledged by its mother and the Court recognized it as her heir on two grounds: 1st, that at the time of the conception of the child the Civil Code, Article 222, read as follows: "Such acknowledgment shall not be made in favor of the children produced by an incestuous or adulterous connection."

It contained, therefore, no prohibition against the acknowledgment by a white woman of her offspring from a man of color, although the marriage between them was forbidden.

But the same Article 222, reproduced in the Code of 1870 under the Article 204, contained a broader prohibition as follows:

Art. 204 (222). "Such acknowledgment shall not be made in favor of children whose parents were incapable of contracting marriage at the time of conception."

The Court said on p. 1107:

"There can be no doubt that, had Article 221 of the Code of 1825 read as does Article 204 of the R. C. C. (Code of 1870) quite a different question would have presented itself."

The second reason given by the Court was that the last paragraph of Article 221 of the Code of 1825 providing that "No other proof of acknowledgment shall be admitted in favor of children of color" was expressly eliminated from the Revised Code of 1870, in which the first part of Article 221 was embodied as Article 203. The consequence of the repeal had been to confer on children of color, whatever be their descent, the same rights to prove their acknowledgment, as have always been enjoyed by children wholly of white parentage.

But in the case before us the Article 222 of the Code of 1825 has not been repealed; on the contrary its provisions have been made more drastic and sweeping by the revision of the Article in 1870 under No. 204 which prohibits the acknowledgment not only of incestuous and adulterous children, but of "all children whose parents were incapable of contracting marriage at the time of conception".

That Article was law at the time of the conception of the child and up to the time of the death of the father. So that, under Article 204, if another Melanie Hebert should have issue of a man of color, she could not acknowledge her child in any manner whatever for the purposes of inheritance, unless the Article itself was repealed.

Article 222 of the Code of 1825 was a law of public order to insure the sanctity of the marriage state and to protect it from invasion, by taking away from the guilty party all hope of condonation. "Lasciate ogni speranza, voi ch'entrate."

The French commentators of C. N. 335 say, to prevent the scandal accompanying such investigations. 5 Demol. S 563, 582-587, 2 Marc. p. 54, S. 62.

The industrious attorney for the plaintiff quotes a number of cases from other States where illegitimate children were adjudged entitled to the benefits of the Employers' Liability Act. But it does not appear that on those States the Liability Act contained the restrictive words "acknowledgment illegitimate children", nor a judicial interpretation of the word "acknowledge" as in this State.

The writer of this opinion, pursuant to the spirit of the Employer's Liability Act, was inclined to believe that the Act might be considered as a separate and independent legislation, not to be interpreted by the Civil Code, and that the words "acknowledged illegitimate children" might be construed simply as "recognized" or established children entitled to alimony, C. C. 920 (914); Bennett vs. Cane, 18 La. Ann. 590; or in default of such construction that the "adulterous child" might be treated as a "dependent". But the decision in the Perkins case, 147 La. 337, does not permit him to entertain the possibility of such a construction.