No.——

First Circuit

---

PENN v. JONES

---

(Dec. 7, 1926. Opinion and Decree.)
(Jan. 7, 1927. Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. Louisiana Digest—Pleading—Par. 62, 80, 90.

A petition may be amended before issue joined or demurrer or exception sustained. Exception no cause of action overruled.

2. Louisiana Digest—Evidence—Par. 47; Marriage—Par. 11.

Officer or minister is presumed to have made the return of marriage ceremony to the clerk as required by law.

3. Louisiana Digest—Evidence—Par. 47; Marriage—Par. 11.

Where the name of the parties to a marriage and that of the person who is claimed to have been a party to the marriage are different, the presumption is that there was no marriage.

4. Louisiana Digest—Evidence—Par. 24, 337.

Parol proof to overcome a presumption should be of a convincing character.

5. Louisiana Digest—Marriage—Par. 13, 14.

When one marries, knowing nothing of a previous marriage of the other contracting party, the marriage is contracted in good faith and produces civil effects. Civil Code, Articles 117 and 118.

6. Louisiana Digest—Bastards and Natural Children—Par. 7.

Where a mother recognizes her child as such and he lives with her to her death, he was an acknowledged natural child and had the right of inheritance from his mother.

7. Louisiana Digest—Bastards and Natural Children—Par. 18, 21.

Under Article 924 of the Civil Code an acknowledged natural child inherits from his mother.

8. Louisiana Digest—Bastards and Natural Children—Par. 18.

A natural child can take possession of his mother's succession only by the order of the court. Therefore his vendees have no greater right. Civil Code, Articles 925 and 949.

Appeal from the Parish of East Baton Rouge. Hon. W. Carruth Jones, Judge.

Action by James A. Penn, et als., against John Jones.

There was judgment for defendant and plaintiffs appealed.

Judgment reversed.

Cross & Moyse, of Baton Rouge, attorneys for plaintiffs, appellant.

Justin C. Daspit, of Baton Rouge, attorney for defendant. appellee.

MOUTON, J.    James A. Penn, T. Jones, Cross and Hermann Moyse, instituted this suit claiming the ownership and right of possession to the southern one-half of a lot of ground, with improvements, situated in the City of Baton Rouge, in the following undivided proportions, viz: One-sixth thereof to Cross, one-sixth to Moyse, and two-thirds to Penn.    Since the institution of the suit Dr. Murray has acquired Penn's two-thirds interest, and has been substituted in the place of Penn as a co-plaintiff.    Cross and Moyse are also claiming, as purchasers from Penn, who it is contended by all the claimants acquired the property by inheritance from his mother, Clara or Clarissa Penn, deceased.

## EXCEPTION.

Defendant filed an exception of no cause of action to the demand of plaintiffs, who were permitted to amend their petition.    Defendant contends that the amendment came too late.    As it was allowed before issue joined, and as no demurrer or exception had been sustained prior thereto the amendment was timely and permissible.    Godchaux vs. Hyde, 126 La. 187, 52 South. 269; First National Bank vs. Moss, 41 La. Ann. 232, 6 South. 25; State vs. Douglas, 34 La. Ann. 523; Police Jury vs. Martin, 140 La. 848, 74 South. 170.    There is no merit in this contention.

## MERITS.

Plaintiffs contend that James A. Penn, from whom they derived their title, was the issue of the marriage of William Penn and Clara or Clarissa Penn or Payne and was therefore a legitimate child and who, as such, was the lawful heir of his mother. In proof of this contention they claim

that Clara or Clarissa was legally married to William Penn in 1869.    In support of their contention that a legal marriage was contracted between these parties they offered in evidence a bond and license certificate which were issued by the clerk of court of East Baton Rouge in that year. The bond was signed by William Penn as principal with Nelson Skinner as surety.

The license authorizes the celebration of a marriage between William Penn and Clarissa Skinner, not Clarrisa Penn or Payne, the name of the mother of William Penn, author in title of the plaintiffs in this suit.

The record fails to show that any marriage was celebrated between William Penn and Clarissa Skinner, Clara or Clarissa Penn or Payne as there was no return of any marriage celebration appended to the license as required under the provision of Act 251, 1855, now embodied in Article 105, Civil Code.    The license, it will be noted, was issued to William Penn and Clarissa Skinner.    This name of Skinner is strikingly different from that of Penn or Payne.    It is true that the mother of William Penn was known under the name of Clara or Clarissa, which preceded the name of Skinner in the license, but there was such a marked dissimilarity between Penn or Payne and Skinner that it is reasonable to presume the minister or officer to whom this license was presented, if it was ever presented to any minister or officer, refused or declined to perform the celebration of a marriage between William Penn and Clara or Clarissa Penn or Payne.    If marriage had been celebrated between these parties under the names of William Penn and Clara or Clarissa Penn or Payne, and for that, even under the name of Skinner for Penn or Payne, it would have been the bounden duty of the celebrant to have appended his return of

celebration on the license which had been issued by the clerk. As such would have the duty of any officer or minister it must be presumed he would have made due return to the clerk as was required by law, an officer always being presumed to have performed his duty. Green vs. N. O. S. & G..I. Ry. Co., 141 La. 120, 74 South. 717.

The striking dissimilarity between the names of Penn or Payne and Skinner, the fact that no return was made of a marriage, create a strong presumption that no marriage was contracted between William Penn and Clarissa Penn, the mother of William Penn. To overcome this presumption plaintiffs have offered parol evidence to establish the marriage. In order to destroy such a presumption, the court said in 141 La. 120—"where the facts were in many respects similar to those here presented—the parol proof should be of convincing character that the parties had entered into their relations with the intention of permanently assuming the responsibility of the marriage".

Another significant fact is that under a license issued in 1872, Clara Payne was married to the defendant, John Jones. This license was issued from the clerk's office of East Baton Rouge and due return was made thereon by the minister who celebrated the marriage. This marriage was solemnized only three years after it is claimed by plaintiffs that these parties were married under the license issued to William Penn and Clarissa Skinner. If Clarissa Penn had been married under this license to William Penn, it is not likely that only three years thereafter she would have ventured into another matrimonial alliance with John Jones and without first obtaining a divorce from William Penn, as no one is presumed to violate the law and is rather expected to observe his social duties.

The proof shows that William Penn and Clarissa lived together between the years 1869 and 1872, during which time James A. Penn, from whom plaintiffs acquired, was born. This short alliance between them is rather suggestive of an illicit connection than of a marriage entered into with proper consideration of all the obligation that such a status imports. The verbal proof introduced to prove the marriage is based on the testimony of two sisters of Clarissa Penn, who said that they had heard of the marriage having taken place between William Penn and Clarissa. One of the sisters was about four years of age in 1869, when this purported marriage is claimed to have taken place, and the other was younger. Such evidence is of little, if of any value.

Other witnesses, as was also said by the two sisters of Clarissa, testified that Penn and Clarissa lived together as man and wife from the time it was said they had been married in 1869, up to the time they separated and Clarissa was married to John Jones, defendant. Testimony of this character is altogether insufficient to overcome the strong and weighty presumption to which we have referred, and we therefore hold that the eivdence fails to establish the marriage between William Penn and Clarissa Penn or Payne.

The record shows that John Jones was lawfully united in wedlock to Clara Payne in 1872, and lived with her until the time of her death in 1924. Even if Clara or Clarissa Payne had, at a prior time, been married to William Penn, we are convinced from a careful examination of the evidence that Jones had no knowledge of such a marriage when he married her, and that his marriage was contracted in good faith as was held by the district judge. It therefore produced its civil effects. C. C. 117, 118; Miller vs. Wiggins,

149 La. 720, 90 South. 109; Succession of Buissier, 41 La. Ann. 217, 5 South. 668. It is shown that James A. Penn, the son of Clarissa, was born during the period she was living in concubinage with William Penn. It is not disputed that James A. Penn, author of plaintiffs, was her child, that she recognized him as such and that he always lived with her to the time of her demise. Hence, James A. Penn, was an acknowledged natural child and had the right of inheritance from his mother. Lee vs. Cooper, 145 La. 145, 98 South. 869· Briggs vs. McLaughlin, 134 La. 134, 63 South. 851; Succession of Lacoste, 142 La. 673, 77 South. 497.

The proof shows that the property in contest was acquired during the existence of the community between Clarissa Penn, deceased, and John Jones, defendant, her surviving spouse. One-half belonged to deceased, and the other half belongs to defendant. The half which James A. Penn inherited from his mother as her natural child had been transferred by him to plaintiffs. James A. Penn being an acknowledged child is a descendant of Clarissa within the meaning of Acts 1910, page 93; No. 80, 1916, page 201. As such he fell heir to her one-half of the property as an acknowledged natural child, C. C. 924; Childers vs. Johnson, 6 La. Ann. 642, and to the exclusion of the defendant, her surviving husband, having transferred to plaintiffs his share in the property, they are the owners thereof in the proportion claimed in their demands, and are hereby recognized as such.

Their vendor, James A. Penn, being called to the succession of his mother, Clarissa, as a natural child, could take possession of the succession which had fallen to him, only by the order of the court of this parish, Civil Code, 1925, 949. His vendees have no greater right. As there may also be an inheritance tax due on the property transferred to plaintiffs, they should take possession subject to that tax if any exists, Bluefields S. S. Co., vs. L. F. C. Steamship Co. 133 La. 431, 63 South. 96. Plaintiffs must therefore be put in possession by order of court.

It is therefore ordered, adjudged and decreed that the judgment rejecting in toto the demand of the plaintiffs be avoided and reversed. It is further ordered and decreed that plaintiffs have judgment recognizing them as owners in indivision to one-half of the southern one-half of a certain lot of ground, together with the buildings and improvements thereon, situated in that part of the City of Baton Rouge known as Suburb Swart and being the southern one-half of lot six (6) of square two hundred and fifty (250), as shown by the official map of the City of Baton Rouge, said half lot having a front on McClop Street of thirty (30) feet by a depth of one hundred and fifty-five (155) feet between parallel lines; and in the following proportions of the one-half of the southern one-half of said certain lot, viz: Two-thirds undivided interest therein to Dr. William C. Murray, one-sixth undivided interest to T. Jones Cross, and one-sixth undivided interest to Herman Moyse, co-plaintiffs in this suit; that the defendant, John Jones, be decreed the owner of one-half of the southern half of said lot instead of being decreed owner of the southern one-half thereof as was decreed below; it is further ordered that plaintiffs be relegated to an action to be placed in possession of their undivided shares by order of the District Court, subject to the inheritance tax if any there be. The cost of this appeal to be paid by defendant, appellee, those of the lower court to be paid in equal proportion by plaintiffs and defendant.