22 So.2d 842

## THOMPSON v. VESTAL LUMBER & MFG. CO.

No. 37443.

Dec. 11, 1944.

On Rehearing April 30, 1945.

Rehearing Denied June 5, 1945.

G. P. Bullis, of Ferriday, for plaintiff.

Parker, Seale & Kelton, of Baton Rouge, amicus curiae.

Dale, Richardson & Dale, of Vidalia, for defendant.

ODOM, Justice.

Clara Thompson filed suit on August 31, 1942, against the defendant company to recover damages alleged to have accrued to her two minor children on account of the death of their father, who was alleged to have been killed through the fault and negligence of the defendant company. She alleged that the father of her children was employed by, and was at work for, the defendant company; that through the gross fault and negligence of the defendant he

was killed on September 1, 1941, and that on account of the death of the father of her children they were damaged in the sum of $5000 each. The damages were claimed under Article 2315 of the Revised Civil Code.

She alleged in Paragraph 1 of her petition that she and Marshall Davis, the father of her children, "lived together in open concubinage or common law marriage * * * for many years, but were never married, altho no lawful impediment to marriage existed." In Paragraph 2 of her petition she alleged that "Of said union, two children were born, namely, Myrtis Lee Davis, now four years old, and Jean Davis, now 14 months old," and alleged in Paragraph 3 that "Said children were the illegitimate children of said Marshall Davis, and were never acknowledged by him as his children, by notarial act, but were always acknowledged as his children, by him, throughout the community, and lived with him, in the same house with him and said Clara Thompson, and were supported by said Marshall Davis, from their birth to the date of his death, as his children."

She prayed for judgment "in favor of said minor children * * * through their said mother," and against the defendant lumber company, in the full sum of $5000 for each of said children, or a total of $10,000.

Defendant excepted to the petition on the ground that it failed to allege either a valid cause or a valid right of action.

Before these exceptions were passed on by the trial judge, the plaintiff filed a sup-

plemental petition, claiming compensation for her children under Act 20 of 1914, as amended by Act 242 of 1928. Defendant filed an exception to the suit for compensation under the Workmen's Compensation Act on the ground that it disclosed neither a lawful cause nor a lawful right of action. The trial court sustained these exceptions, holding that the plaintiff had no cause or right of action either under the provisions of Article 2315 of the Revised Civil Code or under the Workmen's Compensation Act, and dismissed plaintiff's suit in toto.

The plaintiff appealed to the Court of Appeal, Second Circuit. That court affirmed the ruling of the trial judge. 16 So.2d 594. Plaintiff applied to this court for writs, which were granted, and the case is now before us for review.

■ The ruling of the district court and of the Court of Appeal that plaintiff has no cause or right of action under Article 2315 of the Civil Code for damages resulting from the death of the father of her children, even though caused by the gross fault and negligence of the defendant, is supported by repeated decisions of this court.

■ According to plaintiff's allegations, her children are bastards. In Youchican v. Texas & Pacific Ry. Co., 147 La. 1080, 86 So. 551, this court held that under our jurisprudence it is well settled that the provisions of Article 2315 of the Revised Civil Code, granting a right of action to a child or children for damages resulting from the tortious death of a parent, have reference to legitimate children—that is, children born in wedlock—or to children duly legitimated. See also Lynch v. Knoop, 118 La. 611, 43 So. 252, 8 L.R.A.,N.S., 480, 118 Am.St.Rep. 391, 10 Ann.Cas. 807; Landry v. American Creosote Works, 119 La. 231, 43 So. 1016, 11 L.R.A.,N.S., 387; Green v. New Orleans, S. & G. I. R. Co., 141 La. 120, 24 So. 717.

The Court of Appeal cited and relied upon the above cited cases in support of its ruling that the plaintiff had no cause or right of action under Article 2315 of the Code. Its ruling was correct.

The ruling of the district court and of the Court of Appeal that plaintiff has no cause or right of action to recover compensation for her children under the Workmen's Compensation laws of the state was also correct. The Workmen's Compensation law, which is Act 20 of 1914, as originally drafted provided in Section 8 for compensation to be paid an injured employee by his employer for injuries sustained by the employee while engaged at work in the scope and course of his employment where such injuries resulted in disability.

It provided also for compensation to be paid by the employer to the *legal dependents* of the employee in cases where the injuries suffered by the employee resulted in death.

Section 8, Subsection 1(e), contained the following provisions:

"For injury causing death within one year after the accident, there shall be paid to the *legal dependents* of the employee wholly dependent.upon his earnings for sup-

port at the time of the injury, a weekly sum as hereinafter provided * * *." (Italics here and elsewhere in this opinion are the writer's.)

That paragraph further provided that, if the employee leaves "legal dependents" only partially dependent for support upon his wages at the time of the injury, such partial dependents shall receive weekly payments in proportions specified.

Subsection 2, Section 8 of that act provided that:

"The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee:

"(a) A wife upon a husband with whom she was living at the time of the injury and whom she has not abandoned for cause at the time of his death.

"(b) A husband mentally or physically incapacitated for wage earning upon a wife with whom he was living at the time of her injury.

"(c) A child or children under the age of eighteen years (or over said age, if physically or mentally incapacitated from earning) upon the parent with whom he is, or they are, living at the time of the injury of such parent. * * * In all other cases, question of *legal dependency* in whole or in part, shall be determined in accordance with the facts as they may be at the time of the injury; and in such other cases, if there is more than one person wholly dependent the death benefit shall be divided equally among them, and the persons partially dependent, if any, shall receive no part thereof; if there is no one wholly dependent, and more than one person partially dependent, the death benefit shall be divided among them according to the relative extent of their dependency. No person shall be considered a dependent unless a member of the family of the deceased employee or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or legally adopted child."

That part of Section 8 of the original act, which relates to the payment of compensation in cases where the injury sustained by the employee results in death, has been amended seven times. It was first amended by Act 243 of 1916. Subsection 1(f), Section 8 of the 1916 act, provided that:

"For injury causing death within one year after the accident, compensation * * * shall be paid for a period of three hundred weeks, to the following persons."

These persons are named in subsequent paragraphs. Paragraphs (11) and (12) of that subsection read as follows:

"(11) In all cases provided for in this schedule the relation of dependency must exist at the time of the injury.

"(12) Compensation shall be payable under this schedule to or on account of any *child or brother or sister or other dependent member of the family* not otherwise specifically provided for, only if and while such child, brother, sister, or other dependent member of the family not otherwise specifically provided for is under the age of eighteen years * * *."

The terms "child" and "children" as used in this act are defined as follows:

"The term 'child' and 'children' shall cover only legitimate children or acknowledged illegitimate children, but shall include step-children and adopted children if members of the decedent's family at the time of his death, and shall also include posthumous children."

It will be noted that in the 1914 act the compensation due in case the injuries received by the employee result in death was payable to "the *legal dependents* of the employee," who were specifically named in Section 8, Subsection 2(a), (b), and (c), while in the act as amended in 1916 these payments were to be made to certain named individuals, such as a widow, widower, child or children, father, mother, brother and sister, "or other dependent member of the family."

The 1916 act defined what was meant by the terms "child" and "children," specifying that those terms should cover only *legitimate children or acknowledged illegitimate children,* and should include step-children, adopted children, if members of the deceased's family at the time of his death, and also posthumous children. There was no such definition in the 1914 act, that act merely providing that no person should be considered a dependent unless a member of the family of the deceased employee "or bearing to him the relation of husband or widow, or *lineal descendant or ascendant,* or brother or sister, or *legally adopted child.*" In the 1916 act there was no mention made of persons "conclusively presumed to be wholly dependent for support upon a deceased employee."

The original act was next amended by Act 38 of 1918. The provisions of this act, in so far as they relate to the payment of compensation in case of death, are almost identical with those of the 1916 act. This act, like the 1916 act, makes no mention of persons who are conclusively presumed to be dependent upon the deceased. It defines the terms "child" and "children" in the following language:

"The terms 'child' and 'children' shall cover only legitimate children or *acknowledged illegitimate children,* but shall include step-children, posthumous children and adopted children."

The act was next amended by Act 247 of 1920, page 467. The provisions of this act relating to the payment of compensation in case of the death of the employee are like those contained in the 1918 amendment. The 1920 act declares that the terms "child" and "children" "shall cover only *legitimate children, acknowledged illegitimate children,* step-children, posthumous children and adopted children."

The original act was also amended by Act 43 of 1922 and by Act 216 of 1924. These acts made no changes as to the payment of compensation in case of death of an employee, and the definition contained in them of the terms "child" and "children" is identical with that contained in the 1920 act. They, like the other amendments, make no reference to persons who are conclusively presumed to be dependent for support on the wages of the deceased.

Referring again to Act 38 of 1918, which amended the original Compensation Act, we note that the act provided that:

"The terms 'child' and 'children' shall cover only *legitimate children or acknowledged illegitimate children,* but shall include step-children, posthumous children and adopted children."

In the case of Perkins et al. v. Brownell-Drews Lumber Co., Ltd., 147 La. 337, 84 So. 894, the question whether the dependent parents of an illegitimate child, not acknowledged according to the provisions of the Revised Civil Code, were entitled to recover compensation for the death of their son, who was killed at a sawmill in the course of his employment, was squarely presented to this court. In the language of the court, the defense in that case was "that the child was illegitimate, and had never been acknowledged by either of the plaintiffs."

Article 203 of the Revised Civil Code reads as follows:

"The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in presence of two witnesses, by the father and mother or either of them, whenever it shall not have been made in the registering of the birth or baptism of such child."

After quoting this article of the Code, the court said:

"Defendant contends that the modes of acknowledgment here specified are exclusive; and plaintiff contends that they are not, but that a baptism of the child in the presence of the parents as their child, and a declaration by the parents to the federal census taker of their parentage of the child, is the equivalent of a 'registering of the birth or baptism' of the child. For so holding this court would have, not to interpret, but to amend, the said article by recognizing an additional mode of acknowledgment."

The defense in that case was the same as the defense in the case at bar. And in that case, as in the case at bar, the plaintiffs contended that the modes of acknowledgment specified in the Code were not exclusive. In the case at bar, plaintiff alleged that her children were illegitimate and had never been acknowledged by their father by notarial act as his children, but were always acknowledged as his children "throughout the community." In the Perkins case, we held that the modes of acknowledgment specified in the Code were exclusive (citing Succession of Lacosst, 142 La. 673, 77 So. 497), and for that reason the demand of the plaintiffs was rejected.

That case was decided on May 3, 1920, and a rehearing was denied on May 31 of that year, while Act 38 of 1918 was in force. Subsequently, on November 17, 1924, it was held by the Orleans Parish Court of Appeal in the case of Gullung v. Dalgarn Construction Co., 1 La.App. 147, that an illegitimate child not acknowledged according to the forms prescribed by the Civil Code was not entitled to compensation for the death of his father under the Workmen's Compensation Act. The child in that case was an adulterous bastard, and for that reason could not have been legally acknowledged by his parents. But wheth-

er the child was one who could have been acknowledged or not was not an issue in the case. The facts were that the child had not been acknowledged by his parents according to the modes prescribed by the Civil Code, and the court held that, because he was not so acknowledged, he was not entitled to the benefits of the Compensation Act. The late Judge Claiborne, author of the opinion in the Gullung case, made certain observations which, in view of subsequent amendments to the Workmen's Compensation Act, we think are worthy of note. Judge Claiborne said:

"The writer of this opinion, pursuant to the spirit of the Employer's Liability Act, was inclined to believe that the Act might be considered as a separate and independent legislation, not to be interpreted by the Civil Code, and that the words 'acknowledged illegitimate children' might be construed simply as 'recognized' or established children entitled to alimony, C.C. 920 (914); Bennett v. Cane, 18 La.Ann. 590; or in default of such construction that the 'adulterous child' might be treated as a 'dependent'. But the decision in the Perkins case, 147 La. 337 [84 So. 894], does not permit him to entertain the possibility of such a construction."

While Judge Claiborne did not state, in so many words, that he sympathized with a child who found himself in the sad plight of an unacknowledged illegitimate child, or a bastard, his statement clearly shows that he did, and that he was inclined to interpret the statute so as to include illegitimate children recognized by modes other than those specified in the Civil Code, and that he would have done so but for the decision in the Perkins case.

Whether Judge Claiborne intended them to be such or not, his remarks in the Gullung case were suggestions, at least, that, if the members of the Legislature thought that the rule laid down in the Perkins case and followed by him in the Gullung case was harsh and unjust, they might amend the act so as to permit unacknowledged illegitimate children, who were recognized as members of the family of their parents, to recover compensation for the death of their parents, and permit the dependent parents of such children to reap the benefits of the act. We must assume that the members of subsequent Legislatures were aware of the ruling in the Perkins case, decided in 1920, and the ruling in the Gullung case, decided in 1924. The Legislature has amended the act twice since 1924, but in neither act did it see fit to change the seemingly harsh rule relating to illegitimate children not acknowledged by their parents according to the form prescribed by the Code.

The act was amended by Act 85 of 1926, in which it was provided in Section 8, Subsection 2(H), that:

"The term 'child' or 'children' shall cover only legitimate children, step-children, posthumous children, adopted children and *illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204 and 205.*"

Section 8 of the 1914 act was again amended by Act 242 of 1928, and in the 1928 act, in Subsection 2(H), the term

"child" or "children" is defined, word for word, as in the 1926 act. The 1928 act is the one now in force.

Thus the Legislature, at two regular sessions which convened after Judge Claiborne wrote the opinion in the Gullung case, did not amend the Compensation Act, as the judge evidently thought it should be amended, so as to make the act less harsh in its provisions relating to the rights of unacknowledged illegitimate children, and the rights of the parent or parents of such children, to claim compensation. On the contrary, it deliberately and ex industria, we must assume, wrote into the Workmen's Compensation law a provision which corresponds exactly with the ruling in the Perkins and the Gullung cases, by providing that the law does not apply to illegitimate children who have not been acknowledged "under the provisions of Civil Code Articles 203, 204 and 205."

Evidently the purpose of the Legislatures of 1926 and 1928 was to make it certain that the lawmakers intended the act to mean just what the court had said it meant, which was that the phrase "acknowledged illegitimate children" used in the prior acts referred exclusively to those illegitimate children who had been acknowledged according to the forms prescribed by the Civil Code.

In June, 1930, approximately two years after the act was amended in 1928, the Court of Appeal, First Circuit, held that only such illegitimate children as had been acknowledged by their father according to the provisions of the Civil Code, articles 203 et seq., were entitled to compensation under the Workmen's Compensation Act. Wells v. White-Grandin Lumber Co., Inc., 13 La.App. 696, 129 So. 171; 86 A.L.R. 878. See also Stewart v. Parish of Jefferson Davis, 17 La.App. 626, 136 So. 659, decided by the same court in 1931.

The case of Barranco v. Davis, 175 La. 35, 142 So. 844, was decided in May, 1932, and a rehearing was denied on June 20, following. That was a suit, said the court, "brought by Marie Barranco (Gutierrez) to recover the sum of $20 per week for 300 weeks for the death of John Gutierrez, for the use and benefit of petitioner's three minor children, * * * alleged to be the dependent illegitimate children of petitioner and John Gutierrez, and by him to have been acknowledged."

The defendant admitted in his answer that the death of John Gutierrez, the father of the children, was caused by injuries received by him during the course of his employment, but denied that any compensation was due "on the ground that the three children were never acknowledged by their alleged father in the mode prescribed by the Louisiana Workmen's Compensation Act (Act No. 20 of 1914, as amended)."

After defendant filed his answer, he admitted that one of the children, Anna Belle Gutierrez, had been duly acknowledged by her father, and that plaintiff was entitled to recover for the benefit of that child 32½ per cent of the deceased's wages for a period of 300 weeks. The trial judge found as a fact that only one of the children, Anna Belle, had been acknowledged by her father according to the method prescribed in the Civil Code, and rendered judgment

in favor of this child for compensation amounting to 32½ per cent of deceased's wages for 300 weeks, and rejected the demands of the plaintiff for compensation in favor of the other two children for the reason that they had not been so acknowledged.

The case was appealed to the Court of Appeal, Parish of Orleans. That court amended the judgment of the district court by allowing compensation to the three dependent minor children. An application for writs was made to this court, which was granted. This court, after considering the issues involved, "ordered that the judgment of the Court of Appeal for the parish of Orleans be annulled and reversed," and reinstated the judgment of the district court with slight amendments as to the amount of compensation to which the acknowledged child, Anna Belle, was entitled.

It was definitely held in that case that illegitimate children not acknowledged in the manner prescribed by Articles 203, 204, and 205 of the Revised Civil Code are not entitled to compensation under the Workmen's Compensation law. In the course of our opinion we said:

"1. Section 8, subsec. 2(H) of Act No. 242 of 1928 defined the 'child' who is entitled to recover for the death of a parent as follows: '(H) The term "child" or "children" shall cover only legitimate children, step-children, posthumous children, adopted children *and illegitimate children acknowledged under the provisions of* Civil Code Article 203, 204 and 205. * * *'"

We cannot upset the ruling of the Court of Appeal and that of the district court in

the case at bar without overruling the Barranco and Perkins cases, decided by us, and the Gullung, Wells, and Stewart cases, decided by the Courts of Appeal. This we cannot do, for so to do would, in effect, be to write out of the Workmen's Compensation Act, as last amended, that which is clearly written into it.

Section 8, Subsection 2(A) of Act 242 of 1928 provides that:

"(A) The following persons shall be conclusively presumed to be wholly and actually dependent upon the deceased employee."

Those persons are (B) a wife upon a husband with whom she is living at the time of his accident or death; (C) a husband mentally or physically incapacitated from wage-earning upon a wife with whom he is living at the time of her accident or death; (D) *a child or children under the age of 18 years,* or over that age if physically or mentally incapacitated from earning, who are living with the parent at the time of the accident or death of such parent. And it is further provided that:

"In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death * * *." and further provided that:

"No person shall be considered a dependent, unless he is a member of the family of the deceased employee, or bearing to him the relation of husband or widow, or lineal descendant or ascendant, or brother or sister, or child."

According to the view expressed by counsel for plaintiff, these provisions of the act, when read together and in connection with that part of the act which says that "The term 'child' or 'children' shall cover only legitimate children * * * and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204 and 205," are clear and unambiguous, and show that the Legislature did not intend to exclude from the benefits of the act dependent illegitimate children who were members of the deceased's family, but, on the contrary, he argues, show that the Legislature intended to include them in the class entitled to compensation under the act. His argument is that, while legitimate children are not required to prove their dependency because they are "conclusively presumed" to be dependent, this does not mean that illegitimate children are deprived of the benefits of the act if they can prove legal and actual dependency, and prove that they were members of the deceased's family at the time of his death, because the act says that "in all other cases"—that is, cases where dependency is not presumed—the question of "legal and actual dependency * * * shall be determined in accordance with the facts as they may be at the time of the accident and death."

We find no merit in counsel's argument. Referring to the above quoted provisions of the act, we find that it says "No person shall be considered a dependent unless he is a member of the family of the deceased employee, or bearing to him the relation of * * * child."

The children here involved are barred from claiming compensation under the statute for two reasons. The first reason is that they were not members of the family of the deceased, because they are illegitimate children, and the second reason is that they did not bear to the deceased the relation of "children" under the plain terms of the act, which says that the term "children" covers only legitimate children and illegitimate children acknowledged under the provisions of the Civil Code. These children are not included in either class.

They were not members of the family of the deceased. Article 238 [254] of the Revised Civil Code says:

"Illegitimate children, generally speaking, belong to no family, and have no relations; accordingly they are not submitted to the paternal authority, even when they had been legally acknowledged."

Article 254 of the Civil Code of 1825 reads as follows:

"Bastards, generally speaking, belong to no family, and have no relations; accordingly they are not submitted to the paternal authority even when they have been legally acknowledged."

The only difference between the wording of the present Code and that of the Code of 1825 is that in the present Code the words "illegitimate children" are used, and in the 1825 Code the word "bastard" is used. The children involved in the case at bar are not only "illegitimate children," but are "bastards," according to Article 202 of the Code of 1870 and Article 220 of the

Code of 1825, since they have not been acknowledged by their father according to the requirements of the Code.

Since these children, being illegitimate, were not members of their father's family although living with him at the time of his death, and since they were not included in the term "children" under the plain language of the act, they cannot be "considered" dependents of the deceased.

Counsel says in his brief at page 5 that "Illegitimate children are legal dependents of their natural father." But these children were not "natural children." Natural children, says Article 202 of the Code, are "Illegitimate children who have been acknowledged by their father." And we have shown that the only form of acknowledgment of illegitimate children by their father is that prescribed in the Code, which form admittedly has not been followed in this case.

In support of his argument that illegitimate children are dependents of their father, counsel quotes that part of Article 240 of the Code which reads:

"Fathers and mothers owe alimony to their illegitimate children, when they are in need."

But illegitimate children who have not been acknowledged cannot claim alimony. Article 242 of the Code says:

"But in order that they may have a right to sue for this alimony, they must:

"1. Have been legally acknowledged by both their father and mother, or by either of them from whom they claim alimony; or

they must have been declared to be their children by a judgment duly pronounced, in cases where they may be admitted to prove their paternal or maternal descent * * *."

For the reasons assigned, the judgment of the Court of Appeal dismissing plaintiff's suit for damages under Article 2315 of the Revised Civil Code and for compensation under Act 20 of 1914, as amended, on exceptions of no cause and no right of action, is affirmed.

O'NIELL, C. J., concurs in the ruling that the illegitimate children of the deceased employee have no right of action for damages under article 2315 of the Civil Code, but is of the opinion that they have a right of action for compensation, if they were in fact dependents, under the Employers' Liability Act, notwithstanding an illegitimate child is not "conclusively presumed to be wholly dependent upon the employee" for support.

PONDER, J., dissents.

FOURNET, Justice (dissenting in part and concurring in part).

I concur in that part of the majority opinion dismissing the suit instituted by the plaintiff for damages for the benefit of the two children born to her and the deceased out of wedlock under the provisions of Article 2315 of the Revised Civil Code, but I do not subscribe to that portion of the majority opinion dismissing her suit for compensation for these children (at the time this suit was filed 4 years and 14

months respectively) who had been born while the plaintiff and the deceased were living together as man and wife under the same roof and were, at the time of his death, actually dependent upon him for support.

As I understand the holding of the majority opinion, these children, being illegitimate, cannot be considered as children of the deceased under the definition of "children" in the act nor as members of his family or his legal dependents because, in Article 238 of the Revised Civil Code, it is provided that "Illegitimate children, generally speaking, belong to no family, and have no relations * * *"; and for the further reason that they have no right to demand alimony from their parents because they have not been legally acknowledged by them nor judicially pronounced to be their children, in accordance with the provisions of Article 242 of the Revised Civil Code.

In reaching this conclusion, the author of the majority opinion has given the most narrow and restricted meaning of the articles of the Revised Civil Code to the provisions of the Employers' Liability Act instead of endeavoring to ascertain the intention of the legislature in enacting this legislation.

While it is true that this court affirmed a judgment denying parents compensation for the death of their illegitimate son who had never been acknowledged by them under the provisions of Article 203 of the Revised Civil Code in the case of Perkins v. Brownell-Drews Lumber Co., 147 La. 337,

84 So. 894, and concluded that an illegitimate minor son of the illegitimate daughter of the concubine of the deceased was not a legal dependent in the case of Beard v. Rickert Rice Mills, Inc., 185 La. 55, 168 So. 492, 493, it is also true that in both of these cases the court failed to give consideration to the intention of the legislature in enacting the Employers' Liability Act as reflected by the act as a whole. In fact, in the Rickert case the court refrained from doing so for its conclusion was reached from a mere reading of the act without any reference to pertinent sections thereof. "Having reached this conclusion," the court said, "it is unnecessary to consider whether or not the minor, James Willie Gould, was actually a member of the deceased employee's family at the time of the latter's death or whether or not he was actually dependent upon the deceased for total or partial support at that or at any time."

In the very recent case of Archibald v. Employers' Liability Assurance Corporation, 202 La. 89, 11 So.2d 492, 493, however, this court, in awarding compensation under the Employers' Liability Act to the father-in-law, mother-in-law and two sisters-in-law of the deceased employee who had been living with him at the time of his death and were actually dependent upon him for support, did give consideration to this legislative intent. In that case it had been the defendant's contention that "no one can be considered as a legal dependent except a person who, prior to the death of the employee, had the legal right to demand support from him," but we concluded that "It

is well settled that the Workmen's Compensation Act is to be liberally construed with the view of carrying out its purpose. Undoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support," thus, inferentially at least, overruling the Perkins, Davis, and Rickert cases. At any rate, it shows this court has adopted a broad and liberal view in construing this legislation in order that the legislative intention for its enactment may be arrived at.

In the Archibald case the court very aptly pointed out:

"From the history of this type of legislation, its purpose is primarily to abolish the Common Law system relating to injuries to employees as inadequate and to substitute a system based on high conceptions of man's obligations to his fellow man in order that the loss incurred as a result of the employee's injury might be charged to the industry as an element of the cost of production, so that the burden is finally borne by the community in general. Puchner v. Employers' Liability Assurance Corporation, 198 La. 921, 931, 5 So.2d 288.

\* \* . \* \* \*

*"The plaintiffs' right to recover compensation rests entirely upon whether or not they are dependent members of the family of the deceased employee within the meaning of the Act.* Just what relationship must exist between individuals to constitute a family or to make each individual a member of the same family depends on the legislative intent in enacting the statute. *The various definitions of what constitutes a family are of little aid in determining*

*the legislative intent in the Act under consideration* \* \* \*." (Italics mine.)

Obviously, the definition in Subdivision (H) of Subsection 2 of Section 8 of the act, as amended by Act No. 242 of 1928, p. 387, that "The term 'child' or 'children' shall cover only legitimate children, stepchildren, posthumous children, adopted children and illegitimate children acknowledged under the provisions of Civil Code Article 203, 204 and 205," is intended to cover *only* those dependents who are conclusively presumed to be *wholly* dependent upon the deceased employee, for, in Subdivision (c) of this same section, it is provided that *"In all other cases, questions of legal dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the injury* \* \* \*." Act No. 20 of 1914. (Italics mine.)

That the legislature foresaw its inability to name all of the possible legal dependents who might actually be dependent upon a deceased employee coming under the provisions of this act is clearly brought out under Paragraph 12 of Subsection 1(F) of Section 8, Act No. 243 of 1916, p. 516, where is contained the stipulation that "Compensation shall be payable under this schedule to or on account of any \* \* \* *other dependent member of the family not otherwise specifically provided for* \* \* \* while such \* \* \* other dependent member of the family \* \* \* is under the age of eighteen years." (Italics mine.)

It is my opinion, therefore, that these two minor children are legal dependents of

the deceased within the meaning and contemplation of the act and inasmuch as the one upon whom they were dependent for a living lost his life during the course of his employment, the compensation provided for in the act should be passed on to industry and ultimately to the public, as contemplated by the act, and they should not be left to shift for themselves or to become public charges.

For these reasons, I most respectfully dissent from this portion of the majority opinion.

## On Rehearing.

O'NIELL, Chief Justice.

The only question in this case is whether illegitimate children who were members of the family of a deceased employee, residing with him and dependent upon his earnings for support at the time of the accident and death, are entitled to compensation as dependent members of the family, under subsection 2 of section 8 of the Employers' Liability Act, notwithstanding the children were not acknowledged by the father by one of the methods prescribed by article 203 of the Civil Code—that is, by a declaration made in the registering of the birth or baptism of the child, or by a declaration made before a notary public in the presence of two witnesses.

 The case being before us on rehearing, the court adheres to its ruling that the illegitimate children of the deceased employee have no right of action for damages for his death, under article 2315 of the Civil Code. In fact, the plaintiff, as mother and tutrix of the children, in her petition for a rehearing, made no complaint of the judgment rejecting their claim for damages. She complains only of the rejection of the demand for compensation, under the Employers' Liability Act—specifically, under subsection 2 of section 8 of Act 20 of 1914, as amended by Act 242 of 1928.

 The plaintiff concedes that her children, being the unacknowledged illegitimate children of the deceased employee, are not entitled to compensation by virtue only of their being his children. That is because of the provisions in paragraph (H) of subsection 2 of section 8 of the statute that the term "children" shall not include illegitimate children who have not been acknowledged under the provisions of articles 203, 204 and 205 of the Civil Code. Article 203 is the pertinent article. The plaintiff rests her claim for compensation for the children upon the fact only that they were dependent members of the family composed of the father and mother and two children.

 In subsection 2 of section 8 of the Employers' Liability Act, as amended by act 242 of 1928, the dependents of a deceased employee who are entitled to compensation for a fatal accident to the employee are divided into two classes. One of the two classes consists of surviving relations who are conclusively presumed to have been wholly and actually dependent upon the earnings of the deceased employee at the time of the accident and death. They need not prove that they were actually dependent upon the earnings of the deceased employee at the time of the accident or death. In the enumeration of that class

of dependents are children of the deceased employee if they are under the age of 18 years (or over that age if physically or mentally incapacitated) living with the parent at the time of the injury which caused the parent's death. The other class of survivors who are entitled to compensation for an injury causing the death of an employee consists of those who were actually dependent upon his earnings and who were either members of his family or bore to him one of the several relations enumerated in paragraph (D). Claimants in that class are not presumed to have been dependent upon the employee's earnings for support; hence they must prove that they were actually dependent upon the earnings of the employee for support at the time of the accident and death.

■■ This distinction between the two classes of survivors entitled to compensation for an injury causing the death of an employee is made plain in subsection 2 of section 8 of the statute. This subsection provides that for an injury causing death within a year after the accident there shall be paid to the legal dependents of the employee, either wholly or partially dependent upon his earnings for support at the time of the accident and death, certain weekly compensation for a period of 300 weeks. The subsection provides also that certain surviving relations of a deceased employee, including children under the age of 18 years, or physically or mentally incapacitated, "shall be conclusively presumed to be wholly and actually dependent upon the deceased employee." In paragraph (H) of the same subsection it is declared that the

term "child" or "children" shall include only legitimate children, step-children, posthumous children, adopted children, and illegitimate children acknowledged by the deceased parent in one of the forms prescribed by article 203 of the Civil Code. This definition of the term "child" or "children" has reference especially to the children who "shall be conclusively presumed to be wholly and actually dependent upon the deceased employee," and who, therefore, need not prove that they were dependent upon his earnings for support. In paragraph (D) of that subsection it is declared: "In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death." That means that, in all cases where the party claiming compensation for the death of an employee is not conclusively presumed to have been wholly and actually dependent upon the deceased employee for support, the claimant must prove that he was actually dependent upon the earnings of the employee for support, and he must prove either that he was a member of the family of the deceased employee at the time of the accident and death, or that he bore to him one of the several relations enumerated in paragraph (D) of subsection 2 of section 8—thus:

"No person shall be considered a dependent, unless he is a member of the family of the deceased employee, *or* bearing to him the relation of husband or widow, or lineal descendant or ascendent, or brother or sister, or child." [The italics are ours.]

The important word in this quotation is the word "or", in the declaration that no person shall be considered a dependent unless he is a member of the family of the ·deceased employee, *or* bears to him one of the several relations enumerated in paragraph (D) of subsection 2 of section 8.

The word "or" in paragraph (D) is not convertible into "and." The use of the · word "or" in this paragraph leaves no doubt that an illegitimate child claiming compensation for the death of his father must prove *either* that he was duly acknowledged by the deceased employee in one of the forms prescribed in article 203 of the Civil 'Code *or* that he, the child, was in fact a dependent member of the family of the deceased employee. But he need not prove *both* that he was duly acknowledged *and* that he was a dependent member of the family of the deceased employee.

If a person claiming compensation for an injury causing the death of an employee was a dependent member of his family, the claimant need not have borne such relation to the deceased employee as to be "conclusively presumed to be wholly and actually dependent upon the deceased employee" for support. Hence, if the claimant of compensation is an illegitimate child of the deceased employee, and was a dependent member of his family at the time of the accident and death, it is not necessary that the claimant shall have been acknowledged by the employee according to the provisions of article 203 of the Civil 'Code, in order to be entitled to compensation under the Employers' Liability Act.

The word "legal" in the term "legal dependent", as used in subsection 2 of section 8 of the statute, docs not mean legitimate—as distinguishing legitimate from illegitimate relations of the deceased employee. The term "legal dependents" means dependents who are legally entitled to compensation under the statute. The term is applicable to actually dependent. members of the family of the deceased, as well as to the surviving relations who are conclusively presumed to have been dependent upon his earnings for support. In the opening sentence, and in the next following sentence, in this subsection of the statute, the term "legal dependents" is used in a context which leaves no doubt that the term "legal dependents" has reference to dependent members of the family of the deceased employee, as well as to the surviving relations who are conclusively presumed to have been dependent upon the earnings of the deceased employee for support. This meaning of the term "legal dependents" is emphasized in paragraph (D) of subsection 2, where it is declared: "In all other cases, the question of *legal and actual dependency* in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death." [The italics are ours.]

The defendant in this case contends that there can be no such thing as a family headed by a couple living together not in the state of matrimony but in a state of concubinage. A sufficient answer to that is that the word "family", in the provision in paragraph (D) of subsection 2 of section 8 of the statute—that no per-

son shall be considered a dependent unless he is a *member of the family* of the deceased employee, *or* unless he bears to him one of the several relationships listed in that paragraph—is used in the everyday sense in which the word "family" is defined in the dictionaries. In the Civil Code, in article 3556, paragraph 12, the word "family" is defined, both in a limited sense and in the broad sense in which it is generally understood—thus:

"12. Family.—Family in a limited sense, signifies the father, mother and children. In a more extensive sense, it comprehends all the individuals who live under the authority of another, and includes the servants of the father of family.

"It is also employed to signify all the relations who descend from a common root."

Therefore, in the instant case, the father and mother of the two illegitimate children, and the two children themselves, all living together under the same roof, might well be considered a "family" within the limited sense in which the word is defined in paragraph 12 of article 3556 of the Civil Code. But, certainly, this group constituted a family, in the "more extensive sense" in which the word "family" is used in paragraph 12 of article 3556 of the Civil Code. We do not mean that the word family is used there in such an extensive sense as to include the servants of the father of the family. It is not necessary to go that far in the instant case.

This court, in the most recent case on the subject, namely, Archibald v. Employers' Liability Assurance Corporation, 202 La. 89, 11 So.2d 492, adopted the broader definition, or as paragraph 12 of article 3556 of the Civil Code puts it, the "more extensive sense" of the word "family," as it is used in subsection 2 of section 8 of the Employers' Liability Act. In the Archibald Case the father-in-law, the mother-in-law, and two sisters-in-law, of the deceased employee, who was a widower, were allowed compensation for a fatal injury to him, on the basis of their being members of his family at the time of the accident and death. In the course of the opinion in that case, referring to paragraph (E) of subsection 2 of section 8 of the statute, it was said:

"This clearly shows that the Legislature never intended that 'family' was to be given a restricted meaning."

In the Archibald Case the court quoted decisions rendered in many other states, in support of the statement that, in other jurisdictions it has been held that to be a member of the family of a deceased employee one does not "have to bear any of the relationships set out after the word 'or' in the above quoted subsection, Paragraph (D) of Section 8, subsection 2." That quotation is followed by the statement in the Archibald Case: "All that is required is a family or household and the existence of the dependency of a member thereof as illustrated by the facts of the particular case." To support the statement which we have quoted the writer of the opinion in the Archibald Case cited ten decisions of courts of last resort, together with Miss Marian Mayer's book on Workmen's Compensation in Louisiana, page 110.

In a work entitled Injury and Death Under Workmen's Compensation Laws, published in 1944, by Samuel B. Horovitz, author of Practice and Procedure under the Massachusetts Workmen's Compensation Law, the author, on page 300 of his book, referring to the right of an illegitimate child to receive compensation for a fatal injury to his father, says:

"Some regard children of nonmarried parents as 'children' of the mother only; others regard them as illegitimate offspring unworthy of being regarded as a compensation 'child.' Massachusetts and many states have a soft spot only if the child lives with the father,—then it recovers, not as a 'child' but as a member of the family."

Mr. Horovitz means that the soft spot—which Massachusetts and the many other states have for illegitimate children living with their father—is in the heart of the members of the Legislature, not of the courts of justice. The author explains matters by citing the following cases: Harry Scott's Case, 117 Me. 436, 104 A. 794; Andrea Gritta's (dependents') Case, 236 Mass. 204, 127 N.E. 889; Roberts v. Whaley, 192 Mich. 133, 158 N.W. 209, L. R.A.1918A, 189; Piccinim v. Connecticut Light & Power Co., 93 Conn. 423, 106 A. 330.

▇▇ In the instant case the defendant relies in some measure upon article 238 of the Civil Code, which provides:

"Illegitimate children, generally speaking, belong to no family, and have no relations; accordingly they are not submitted to the paternal authority, even when they have been legally acknowledged."

So far as this article of the Code deals with paternal authority, it has no connection with the provisions of subsection 2 of section 8 of the Employers' Liability Act, dealing with dependent illegitimate children. We say this because in the article of the Code no distinction is made between illegitimate children who have been legally acknowledged and those who have not been legally acknowledged, with regard to their being free from paternal authority. It is said there that illegitimate children, even when they have been legally acknowledged, "are not submitted to the paternal authority." The word "submitted" is obviously not an appropriate translation of the word soumis in the French text of the corresponding article, 254, in the Code of 1825—or in article 59, p. 57, of the Code or Digest of 1808. The French word soumis is the past participle of the verb soumettre, and means—according to the context in which it is used—"subject" or "subjected", or "submitted." But, in the context in which it appears in article 254 of the Code of 1825, the word soumis means "subject" or "subjected." It does not mean "submitted." The text of article 254 reads as follows:

"Les bâtards, en général, ne sont d'aucune famille et n'ont point de parens; aussi ne sont-ils pas soumis à la puisance paternelle, même lorsqu'ils sont légalement reconnus."

A more accurate translation of article 254 of the Code of 1825, giving to each word the meaning ascribed to it by Spieres & Surrenne, would read like this:

"Bastards, generally, do not belong to any family and have no relations; likewise they are not subject to the paternal authority, even when they have been legally acknowledged."

The term en général means "in general," or "generally," but it means also "as a general rule," as distinguished from an invariable rule. See p. 801 of Spieres and Surrenne's Dictionary. Our opinion is that when the writers of article 254 of. the Code of 1825 wrote "Bastards, generally, do not belong to any family and have no relations," they meant that a bastard is not considered a member of any particular family, or as having any relations, unless he is actually residing in the family composed of persons to whom the bastard is an illegitimate relation. The wording of the article, either in the French text or in the translation in the Code of 1825, or in the revision of 1870, does not convey the idea that bastards, or unacknowledged illegitimate children, cannot be considered under any circumstances to be members of a family composed of persons of whom the bastards are the illegitimate relations. This conclusion is applicable particularly to the provisions of subsection 2 of section 8 of the Employers' Liability Act.

The members of the Legislature, in adopting subsection 2 of section 8 of the Employers' Liability Act, and in amending that subsection from time to time, have not considered it against public policy or good morals to allow an illegitimate child compensation for the accidental death of his or her father, if the child was living with the father as a member of his family

and was dependent upon his earnings for support at the time of the accident and death. If that were not true the Legislature would have excluded, in terms, unacknowledged illegitimate children from the right to have compensation for the accidental death of an employee. It was so declared in one of the cases cited in Mr. Horovitz's book, page 300, namely, in the case of Piccinim v. Connecticut Light & Power Co., 93 Conn. 423, loc.cit. pp. 426, 427, 106 A. 330. In fact, in every one of the cases cited by Mr. Horovitz it is declared that it is not against a sound public policy, either upon moral grounds or as a matter of law, or justice, that illegitimate children should not be penalized for their illegitimacy by being denied the rights and benefits accorded to all other members of the family of an employee, dependent upon his earnings for support. For example, in Roberts v. Whaley, 192 Mich. 133, loc.cit. 138, 158 N.W. 209, loc.cit. 211, L.R.A. 1918A. 189, the Supreme Court of Michigan observed:

"But it is said they are illegitimate children, and that the law will not encourage the immoral and unlawful relation of the parents by recognizing them. The children are in no wise responsible for their existence or status. They are here, and must be cared for and supported. They were cared for and supported by the deceased up to the time of his death. It was his legal and moral duty to support them, and he was responding to that duty when death overtook him."

That statement, by Justice Bird of the Supreme Court of Michigan, that it was

the legal and moral duty of the father to support his illegitimate children, is as true under the Civil Code of Louisiana as under the laws of Michigan. In article 240 of the Civil Code, it is declared:

"Fathers and mothers owe alimony to their illegitimate children, when they are in need."

It is declared in article 242 that in order that illegitimate children may have the right to sue for alimony they must have been acknowledged by the parent from whom they claim the alimony or must be judicially declared to be his or her children. But the children in this instance are not claiming alimony. They are claiming compensation for the death of their father, under the Employers' Liability Act. There is nothing in the statute—and certainly nothing in the Civil Code—to require illegitimate children to have their paternity established by a judicial decree, rendered in a separate suit, before they can sue for compensation for the death of their father, under the Employers' Liability Act. The fact that they are illegitimate children of the deceased employee may be shown in their suit for compensation, in support of their claim that they were members of his family and dependent upon his earnings for support at the time of the accident and death.

The decision in Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 So. 894, does not conflict with the claim of the illegitimate children in this case. The only question that was decided—or that was tendered for decision—in the Perkins Case was whether the parents of an unacknowl-

edged illegitimate child, who was killed in the course of his employment in the defendant's sawmill, were entitled to compensation, under the Employers' Liability Act. It is stated in the opinion rendered in the case that the plaintiffs sued as heirs of their illegitimate child. They did not claim compensation as dependent members of the family of the child, or even allege that they had been dependent upon his earnings for support. The decision was based upon the laws of inheritance—specifically, upon the provisions of the Civil Code concerning irregular successions and the right of the father or mother of an illegitimate child to inherit his estate. The court based its decision, rejecting the demand of the parents of the illegitimate child, upon the Succession of Lacosst, 142 La. 673, 77 So. 497. At the conclusion of the opinion in the Perkins Case it was said: "The controlling decision is Succession of Lacosst, 142 La. 673, 77 So. 497, to the effect that a parent has not this right",—meaning the right of an illegitimate child to prove acknowledgment otherwise than by the modes prescribed in article 203 of the Civil Code. The laws of inheritance, which governed the decision in the Succession of Lacosst, and which were invoked unsuccessfully in the Perkins Case, have nothing whatever to do with the right of a surviving dependent member of the family of a deceased employee to receive compensation under the Employers' Liability Act.

The question presented in the instant case was not an issue in the case of Barranco v. Davis, 175 La. 35, 142 So. 844, and, of course, was not considered, much

less decided, by this court, or by the court of appeal, or by the trial court, in the Barranco Case. In that case the plaintiff, being the mother and tutrix of three illegitimate children, claimed compensation for them for the accidental death of their father, on the ground only that they were duly acknowledged by him and the mother in the registering of the birth and baptism of the children. The plaintiff did not, either in her pleadings or in her briefs, in the district court, or in the court of appeal, or in the supreme court, contend that the children were living with the father as members of his family, dependent upon his earnings for support, at the time of the accident and death. On the trial of the case the defendant admitted that one of the children had been acknowledged legally and formally by both parents and was entitled to the compensation claimed for that child. After trial of the case the court found that the two other illegitimate children were never legally acknowledged by their father and therefore were not entitled to compensation as acknowledged illegitimate children—conclusively presumed to be dependent upon their father's earnings for support. For that reason alone the court rejected their demand. On appeal the court of appeal sustained the demand for compensation for all of the three children, on the ground solely that they were duly acknowledged illegitimate children and were therefore conclusively presumed to have been dependent upon the earnings of their father for support. The court of appeal did not for one moment consider the question whether the children might have been entitled to compensation as dependent

members of the family and without regard to their being the children of the deceased employee. On review by this court the judgment of the court of appeal was reversed, so far as the two unacknowledged illegitimate children were concerned, and their claim was rejected on the ground solely that they were not legally acknowledged by their father. This court did not consider for one moment the question whether the two unacknowledged illegitimate children might have been entitled to compensation as dependent members of the family of the deceased employee. It cannot be said that the court passed upon the question whether an unacknowledged illegitimate child may claim compensation successfully as a dependent member of the family of the deceased employee, when that question was never considered by the court or presented for decision. We must assume, from the fact that the tutrix did not claim compensation for her children as dependent members of the family of the deceased employee, that they were not in fact dependent members of his family at the time of the accident and death.

In the case of Beard v. Rickert Rice Mills, 185 La. 55, 168 So. 492, it was held that an illegitimate child of an illegitimate daughter of the concubine of a deceased employee was not entitled to compensation under the Employers' Liability Act, for an accidental injury causing the death of the employee, even if the child was a member of the family of the deceased employee and was dependent upon his earnings for support at the time of the accident and death. That decision was based solely upon the interpretation of the term *legal*

*dependents.* In the opinion rendered in the case the term *legal dependents* appears five times, and the words *legal dependents* are italicized in four of the five instances; and the conclusion is stated thus:

"It is clear to us that the Workmen's Compensation or Employers' Liability Acts in force now and at the time of Bazil Beard's death provide only for compensation to legal dependents. Having reached this conclusion, it is unnecessary to consider whether or not the minor, James Willie Gould, was actually a member of the deceased employee's family at the time of the latter's death or whether or not he was actually dependent upon the deceased for total or partial support at that or at any time."

It is plain therefore that the decision in the Beard Case turned upon the interpretation of the term "legal dependents," as meaning *legitimate* dependents. The interpretation is not applicable to *acknowledged* illegitimate children of the deceased employee, because, by the very terms of the statute, they are conclusively presumed to be "legal dependents." The ruling in the Beard Case means that persons of illegitimate birth are absolutely denied—because of their illegitimacy—the protection of the Workmen's Compensation Law in cases where they are dependent members of the family of an employee who is under the protection of the Workmen's Compensation Law.

The Beard Case is not cited in the prevailing opinion rendered on the original hearing in the instant case. So far as the decision purports to exclude persons of illegitimate birth, from the protection afforded by the Employers' Liability Act to the dependent members of the family of an employee, the decision is based upon an error in the interpretation of the term "legal dependents," which error should not be perpetuated. And, so far as the decision purports to exclude from the protection afforded by the Employers' Liability Act all dependent members of the family of an employee except those who are specifically enumerated in subsection 2 of section 8 of the act, the decision was virtually overruled in Archibald v. Employers' Liability Assurance Corporation, 202 La. 89, 11 So. 2d 492, not cited in the prevailing opinion rendered on the original hearing of the instant case. In the opinion rendered in the Archibald Case the court showed its disapproval of the decision rendered in the Beard Case, thus:

"The legal dependents designated in the statute are members of the family of the deceased employee, *or* persons bearing to him the relation of husband, widow, lineal ascendant or descendant, brother, sister, or child, who were dependent on him for support at the time of his death. [Italics are ours.]

\* \* \* \* \*

"It is well settled that the Workmen's Compensation Act is to be liberally construed with the view of carrying out its purpose. Undoubtedly, the Legislature intended to allow compensation to those who were dependent upon an employee for support.

\* \* \* \* \*

"The defendants rely on the case of Beard v. Rickert Rice Mills, 185 La. 55, 168

So. 492. The question presented in that case was whether an illegitimate son of an illegitimate daughter of the deceased employee and his concubine could recover under the Workmen's Compensation Act. This Court in deciding the case held that the plaintiff was not a *legal dependent* and stated that it was unnecessary to determine whether or not he was actually a member of the deceased employee's family or actually dependent upon him for support. While we refrain from commenting on the holding in that case, it is sufficient to say that it is not in point with the present case." [Italics are ours.]

In the case of Gullung v. Dalgarn Construction Co., 1 La.App. 147, decided by the Court of Appeal for the Parish of Orleans, in 1924, the only question that was decided —or that was tendered for decision—was whether an adulterous bastard child, who was of course unacknowledged in the manner required by article 203 of the Civil Code, and who, according to article 204 could not have been acknowledged legally because his parents could not have contracted a legal marriage, was not entitled to compensation, *as a child,* for the accidental death of his father, under subsection 2 of section 8 of the Employers' Liability Act. The plaintiff in the case, being the mother and tutrix of the child, did not claim compensation on the ground that the child was a dependent member of the family of the deceased employee; hence the question whether the child was entitled to compensation as a dependent member of the family of the deceased employee was not considered, much less decided, by the

trial judge or by the court of appeal. For that reason the decision rendered in that case, like the decision in the Barranco Case, is not at all applicable to the instant case.

In the case of Wells v. White-Grandin Lumber Co., 13 La.App. 696, 129 So. 171, 172, decided by the Court of Appeal for the First Circuit, in 1930, the only question that was decided, or that was tendered for decision, was whether the informal acknowledgment of the paternity of an illegitimate child was a sufficient compliance with article 203 of the Civil Code, to lift the status of the child to the class "called natural children" as "contradistinguished by the appellation of bastards," as provided in article 202 of the Civil Code. The plaintiff, Irene Wells, who was the mother and sued as tutrix of the illegitimate child, did not claim that the child was a dependent member of the family of the deceased employee. Hence the court did not decide— and had no occasion for deciding—whether the illegitimate child was entitled to compensation as a dependent member of the family of the deceased employee. The writer of the opinion stated the question and answer, thus:

"The important, and we may say the only, question raised under the exception of no cause of action, as well as under the issue tendered by the petition and answer, is with regard to the acknowledgment by the alleged father of this illegitimate child. .

&ast; . &ast; &ast; &ast; &ast;

"If it be conceded that plaintiff's petition sets out a cause of action, we are satis-

fied the proof fails to show an acknowledgment of the child by the father in the manner required by law, and therefore the claim has to be rejected."

The decision in the Wells Case, therefore, like the decision in the Barranco Case, and in the Gullung Case, is not applicable to the issue presented in the instant case.

In the case of Stewart v. Parish of Jefferson Davis, 17 La.App. 626, 136 So. 659, decided by the Court of Appeal for the First Circuit, in 1931, the only question decided—which was the only question presented for decision—was whether the certificate of a Catholic Priest, certifying merely that on January 17, 1913, he baptized a child named John, born on November 21, 1912, being a child of Edmond Stewart and Marie Thibodaux, constituted such proof as is required by article 203 of the Civil Code to constitute an acknowledgment by the father of the paternity of the child. The court held that the certificate of the priest did not constitute a legal acknowledgment by either of the parents under article 203 of the Civil Code. For that reason alone the court dismissed the demand of the mother for compensation for the accidental death of John Stewart. The suit was brought by the father of the illegitimate child. The mother intervened, alleging that she was the wife of the boy's father, and that she was living separate and apart from him. She alleged that John Stewart was their illegitimate son, and that she had been for several years partially dependent upon him for support.

Hence she claimed compensation for the boy's death, under the Employers' Liability Act. She did not claim that she and the boy were residing together as members of the same family at the time of the accident or death. In fact, from her allegation that she was living separate and apart from her husband at the time of the boy's death, we infer that she and the boy were not residing together as members of a family. When the case was called for trial the plaintiff abandoned his suit, and the trial proceeded only on the demand of the intervener, mother of the illegitimate child. All that the court decided was that the certificate of the priest did not constitute an acknowledgment by the parents of the illegitimate child, as required by article 203 of the Civil Code to constitute a legal acknowledgment. The decision rendered in that case, therefore, like the decision in the Barranco Case, in the Wells Case, and in the Gullung Case, is not at all applicable to the issue presented in the instant case.

The decree rendered by this court on the original hearing of this case having been set aside by the granting of a rehearing, the judgment rendered by the district court and affirmed by the court of appeal is now annulled, the exception of no cause or right of action is overruled, and the case is ordered remanded to the district court for further proceedings consistent with this opinion on rehearing. The costs of appeal and of the proceedings in this court are to be borne by the defendant; all other court costs are to abide the final disposition of the case. The right is reserved to the defendant to apply for a rehearing.