HARDY, Judge.
This is a claim for compensation benefits asserted by plaintiff, Henrietta Williams, on behalf of her minor son, Sherman Hudson, the alleged posthumously born child and dependent member of the household of the deceased employee, Herman Hudson. From a judgment in favor of defendant insurer, plaintiff prosecutes this appeal.
The facts involved in the instant case, though somewhat complicated, are not open to dispute, having been conclusively established in part by stipulation of counsel and by the testimony of witnesses for plaintiff, no testimony having been offered on behalf of defendant. This case, therefore, exclusively involves questions of law.
Herman Hudson, a Negro laborer in the employment of Central Culvert Corporation, for whom American Employers Insurance Company was the workmen’s compensation carrier, died on November 17, 1956, as the result of accidental injuries received on said date while in the performance of the duties of his employment as a common laborer.
Decedent was legally married to Annie Lee Jackson on March 13, 1954, which marriage was never dissolved and of which union two children were born. However, in or about the month of February, 1956, Herman Hudson began living in a state of open concubinage with plaintiff, Henrietta Williams, and this relationship had continued, without interruption, from its inception up to the time of Hudson’s death. On July 24, 1957, slightly more than eight months subsequent to the death of Herman Hudson, Henrietta Williams gave birth to a son who was given the name of Sherman' Hudson and who is the real party at interest in this suit. The uncontroverted evidence in this case serves to conclusively establish the fact that the decedent, Herman Hudson, was the father of the child, Sherman Hudson, posthumously bom to his concubine, Henrietta Williams. In this action plaintiff seeks an award as tutrix of the minor, Sherman Hudson, to be computed on the basis of 32i/£% of the wages of the deceased employee from November 17, 1956, for a period not exceeding 400 weeks. The stipulation referred to above established the wages of the deceased employee as having been based upon a rate of $1 per hour for an eight-hour day on a five-day work week.
The conflicting contentions of the parties and the issues of law upon which they respectively rely have been ably and concisely presented before this court in arguments and brief of counsel.
On behalf of the claimant, while it is admitted that the minor, Sherman Hudson, is a posthumous, adulterous bastard, it is, nonetheless, urged that recovery is authorized on the grounds that (A) the said Sherman Hudson is a posthumous child of the deceased employee, entitled to recover benefits under the provisions of LSA-R.S. 23:1021(3) and 23:1232(4), and (B) that *570 Sherman Hudson, being in útero at the time of the death of Herman Hudson, was actually dependent upon and a member of the household and family of said decedent.
Plaintiff’s demands are resisted by defendant on the grounds (1) that under the facts and circumstances of this case the mother has no right to prove the paternity of an adulterous bastard, and alternatively (2) conceding, arguendo, that such right exists, the posthumously born child is not entitled to recovery of compensation benefits.
Some aspects of this case present issues which we must regard as having been definitely settled by our jurisprudence, but it also tenders at least one issue which has ■ not been settled by the comprehensive and growing jurisprudence of our State relating to the interpretation of our Workmen’s Compensation Statute.
We do not consider that the posthumously born child, who is the person for whom compensation benefits are sought in the instant case, can be classified as a child entitled to benefits under the interpretation of LSA-R.S. 23:1021(3). We regard this point as having been conclusively determined by the Supreme Court in the case of Thompson v. Vestal Lumber & Mfg. Co., 208 La. 83, 22 So.2d 842. In the cited case the court exhaustively considered the meaning, purpose and effect of the statutory provision which is now comprehended in the LSA-Revised Statutes of 1950 under Title 23 as Section 1021, paragraph 3, reading as follows:
“ ‘Child’ or ‘Children’ covers only legitimate children, stepchildren, posthumous children, adopted children, and illegitimate children acknowledged under the provisions of Civil Code Articles 203, 204, and 205.”
The court held that the above definition comprehended only the classification embracing those who are conclusively presumed to have been wholly and actually dependent upon the earnings of the deceased employee at the time of the accident and death. The effect of this interpretation has been to bar the claims of illegitimate children who have sought to recover benefits solely upon the ground of relationship. The qualifying adjective “legitimate” was also applied to stepchildren in the case of Dangerfield v. Indemnity Ins. Co. of North America, 209 La. 195, 24 So.2d 375. In the course of development of the opinion of the Supreme Court in the cited case it was observed that the same adjective, “legitimate”, must be applied to posthumous children. It follows-that plaintiff’s first contention must be rejected. The posthumous adulterous bastard) who is the ultimate prospective beneficiary of the claim here asserted is not a member of that classified category which is permitted the benefit of a conclusive presumption of dependency upon the deceased employee.
It follows that this child can recover, if at all, only upon proof that he was a dependent member of the family of the deceased employee at the time of the accident and death. The right to recover under such circumstance was specifically declared by the court in the Thompson case in the following words [208 La. 83, 22 So.2d 853] :
“If a person claiming compensation for an injury causing the death of an employee was a dependent member of his family, the claimant need not have borne such relation to the deceased employee as to be ‘conclusively presumed to be wholly and actually dependent upon the deceased employee’’ for support. Hence, if the claimant of compensation is an illegitimate child of the deceased employee, and was a dependent member of his family at the time of the accident and death, it is not necessary that the claimant shall have been acknowledged by the employee according to the provisions of Article 203 of the Civil Code, in order *571 to be entitled to compensation under the Employers’ Liability Act.” (Emphasis supplied.)
The effect of the above quoted enunciation is to establish the right of any illegitimate child of a deceased employee to the benefits provided by statute if such child was a dependent member of the family of the said employee. In order to establish his right to benefits, such claimant must prove (a) the existence of the relationship, and (b) dependency as a member of the family of the deceased employee at the time of the accident and death.
On trial of the instant case astute counsel for defendant objected to the admission of evidence, bearing upon proof of paternity, on the ground that our law does not permit proof of the paternity of an adulterous bastard. Counsel argues, generally, that our system of civil law deals harshly with children who occupy the status of bastards; that they are prohibited from inheriting and that even the right of acknowledgment is denied children in this category. All of these contentions are indubitably correct, but we observe, en pas-sant, that our well established jurisprudence has placed its imprimatur upon a double standard of interpretation, adhering most meticulously to the enforcement of stringent restrictions and prohibitions in connection with the rights of inheritance, and, on the other hand, unblushingly approving recovery by adulterous, illegitimate offspring under the provisions of our compensation statute, which latter position is exemplified in Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177, the facts of which case are incontrovertible evidence of the verity of the adage that “truth is stranger than fiction.”
Counsel for defendant calls attention to the provisions of Article 209 of the LSA-Civil Code dealing with proof of paternity and correctly observes that in the instant case only that nature of proof set forth under paragraph 3 of the said article could be applicable. This provision to which reference is made authorizes proof of paternal descent by establishing several methods, among which is recited:
“3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.”
In the instant case the requirements of the above provision have been completely met and there is not the slightest contradiction of the evidence thereof.
Counsel relies upon the case of Jung v. Doriocourt, 4 La. 175, as authority for the principle that Article 209 does not apply to children born of an adulterous union. On this authority counsel would justify the conclusion that in the instant case proof of paternity by compliance with the above quoted requirement is not permissible because the child was born of an adulterous union.
Careful study of the Jung case convinces us that it is not acceptable as authority for the proposition contended. The facts under consideration by the court were so involved that we do not find detailed discussion desirable. It suffices to say that the court actually did sustain the admission of evidence which was introduced on the part of defendants for the purpose of establishing the fact that the plaintiff, Jung, was — “the testator’s adulterous bastard.”
Be that as it may, we do not think it decisive of the issue presented in the instant case whether or not the provisions of Article 209 of the LSA-Civil Code with reference to proof of paternity be restricted to illegitimate children and denied to adulterous bastards. We say this because we are concerned in the instant case not with rights of succession and inheritance, with respect to which the law and the provisions of the Civil Code have carefully erected defenses against claims of the offspring of immoral relationships, but, rather, we are dealing here with the inter *572 pretation and application of a statute which was admittedly designed and intended as social legislation for the benefit of dependents of employees. This concept is exemplified in the cases cited supra, Thompson v. Vestal Lumber & Mfg. Co. and Caddo Contracting Co. v. Johnson.
Additionally, the firmly established and wholly accepted liberal construction principle has now become an integral part of judicial interpretation and application of the provisions of the Workmen’s Compensation Statute of our State. This principle is epitomized in Dangerfield v. Indemnity Ins. Co. of North America, supra [209 La. 195, 24 So.2d 378], in which case the court, while denying recovery on the ground that the claimants did not come under the classification of legitimate stepchildren, nevertheless, remanded the case to the district court for the express purpose of permitting plaintiff
“ * * * to allege that the children were members of the family of the decedent
Finally, we are confronted with the necessity for determining a question that appears to be res nova to our jurisprudence, namely: Is a posthumously born, adulterous bastard entitled to benefits under the Workmen’s Compensation Statute on the ground that it is a dependent member of the family of the deceased employee?
As a point of departure for the discussion of this issue we refer to Article 954 of the I^SA-Civil Code which reads as follows :
"Children in útero. — The child in its mother’s womb is considered as born for all purposes of its own interest * * *»
We are fully aware of the pertinency of the following observation on this point made by the learned judge of the district court in his written opinion as follows:
“True enough, under Article 954 of our Civil Code, a child is born for all purposes of its own interests when it is conceived, and unborn children are endowed with rights which may be exercised if they are ultimately born alive. Here we are not dealing with rights fixed or determined under the Civil Code but rights accruing under the compensation statute and running in favor of dependent ‘members of the family’.
“To the mind of this court it is unreasonable, and, therefore not within the contemplation of the statute, to say that an unborn child is a ‘member of the family’, for that term connotes a living person. The unborn child becomes a member of the family upon birth. The right to compensation is determined upon the basis of facts existing at the time of the death of the employee and not deferred to await the contingency of live birth. This, of course, is the distinction between rights accruing under the compensation law and Civil Code Article 954.”
Despite the apparent logic of the above quoted comment, we are constrained to feel that the argument leads to an illogical conclusion. On the other hand, it is appropriate to recall that the act itself, in the section enumerating the classification of children who are conclusively presumed to be dependent upon deceased employees, specifically includes “posthumous children.” It is apparent that this specification was intended to confer the advantages and benefits flowing from the statute upon children in útero, upon an equal footing with those already born. This being so, it requires, no strain of interpretation to conclude that posthumous children who do not fall within the conclusive presumption category should be included in the alternative section of the act which extends the benefits to those who can prove themselves to be dependent members of the family, to which classification, under our jurisprudence, illegitimate and adulterous offspring have been admitted.
We perceive no anomaly in extending the benefits of the statutes to a posthumous *573 child of a deceased employee on the ground that it was a dependent member of the family of the household of its deceased father at the time of his death, even though it was then in embryo. Life was present, life continued, and that life, before, at and after birth, was dependent upon the father for its support and maintenance.
Finally, we are required to determine the basis of the award and the time at which the first payment became due.
As has been above observed, the stipulation of counsel in the instant case fixed the wages of the deceased employee upon the basis of $1 per hour for an eight-hour day and a five-day work week. Despite this stipulation, which would have the effect of indicating the employee’s wages as having been $40 per week, we are constrained to follow the apparently immutable rule which was last fixed by the Supreme Court in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399, 404, enunciated as follows:
“After determining an employee’s daily wage, the six day week is to be employed in calculating his weekly wage.”
It follows that the computation of weekly benefits in the instant case must be based upon a potential weekly wage of $48.
The date upon which payment became due was considered by our brethren of the Orleans Court in a case involving an award in favor of a posthumous child, Eason v. Alexander Shipyards, 47 So.2d 114. We are in accord with the conclusion reached in the cited case to the effect that payments should be computed from the time of the death of the deceased workman, November 17, 1956.
For the reasons assigned the judgment appealed from is annulled and reversed and
It Is Now Ordered, Adjudged and Decreed that there be judgment in favor of plaintiff, Henrietta Williams, as natural tutrix of the minor, Sherman Hudson, and against the defendant, American Employers Insurance Company, condemning the said defendant to pay plaintiff the amount of $15.60 per week for a period not exceeding 400 weeks beginning November 17, 1956, together with interest at the rate of 5% per annum on each weekly payment from the date due until paid.
It Is Further Ordered, Adjudged and Decreed that the fee of plaintiff’s attorneys be and it is fixed and approved at 20% of the total amount of the award, not exceeding $1,000.
All costs are taxed against defendant-appellee.