242 So.2d 567 (1970)
257 La. 424
Julia Chambers STOKES et al.
v.
AETNA CASUALTY AND SURETY COMPANY et al.
No. 50400.
Supreme Court of Louisiana.
December 14, 1970.
Rehearing Denied January 18, 1971.
Lacour & Wilson, Vanue B. Lacour, Baton Rouge, for defendant-appellant-applicant.
Dale, Owen, Richardson, Taylor & Mathews, W. Henson Moore, Baton Rouge, for defendants-appellees-respondents.
HAMLIN, Justice.
Henry Clyde Stokes was injured on June 21, 1967, while in the course and scope of his employment with Earl Gibbon Transport, Inc., and he died as a result thereof the following day.
At the time of his death Stokes resided and maintained a household with one Willie Mae Weber to whom he was not married, he, at the time, being the husband of Adlay Jones Stokes. But living in the Stokes home were the four legitimate, minor children born of the marriage between Stokes and Adlay Jones Stokes, and one unacknowledged illegitimate minor born of the relationship of Stokes and Willie Mae Weber. A second illegitimate child of the latter and Stokes was born posthumously.
On June 29, 1967 a suit was filed for workmen's compensation benefits on behalf of Stokes' four legitimate children. By answer and reconventional demand Stokes' employer and its insurer, Aetna Casualty and Surety Company, converted the suit into a concursus proceeding, they interpleading Willie Mae Weber who was ordered to appear and assert any claims she might have in behalf of the illegitimate minor *568 child of Stokes. (Hereafter, reference to the "employer" will include both it and its insurer.)
Willie Mae Weber appeared in the concursus proceeding and claimed compensation benefits for her then living minor child.
Because the accident which caused the death of Stokes occurred under circumstances giving rise to a third party claim, a tort action was brought on behalf of the legitimate children against the alleged third party tort feasor and, subsequently, recovery was had for them (by compromise and settlement) of an amount in excess of the maximum workmen's compensation that they could recover for the death of their father.
Later, the legitimate children dismissed their compensation demand, inasmuch as the amount thereof would be included in the tort settlement and payable to the employer (see LRS 23:1101-23:1103). And the defendant employer filed an amended pleading in the concursus proceeding asserting the extinguishment of the compensation claim by reason of the tort settlement, it praying that judgment be rendered rejecting the demands of all parties.
Willie Mae Weber did not seek damages from the tort feasor. However, she filed a supplemental pleading in the concursus proceeding claiming benefits for her born child and for the illegitimate posthumous offspring.
The case was tried on a stipulation of facts setting forth the circumstances heretofore shown.
The district court decreed that the legitimate children, there being four in number, were entitled to the maximum amount of compensation then allowable ($35 per week for four hundred weeks) and that this had been settled in the tort action. It further held that there be judgment in favor of Willie Mae Weber for the use and benefit of her illegitimate children for any compensation benefits which might be remaining and unused by the four legitimate children.
Willie Mae Weber appealed. The judgment was affirmed. La.App., 232 So.2d 328. We granted certiorari. 255 La. 804, 233 So.2d 247.
The first question posed by the facts of this case is whether the law of this state, which relegates a decedent's unacknowledged illegitimate, dependent children (members of his family) to a position inferior to that of his legitimate (or legally acknowledged) dependent childrenso that when (as in this case) the latter are entitled to all of the allowable compensation and the unacknowledged, illegitimate are entitled to none of itdiscriminates against the illegitimates, as being violative of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United Statesalthough in the absence of legitimates (or a sufficiently small number of them) the unacknowledged illegitimate children would have a right to recover. (See LRS 23:1021, 23:1231, 23:1232, 23:1252 and 23:1253, and Thompson v. Vestal Lumber and Manufacturing Company, 208 La. 83, 22 So.2d 842.)
In urging that the compensation law is unconstitutional, Willie Mae Weber (mother of the illegitimate children) relies principally on the decisions (or the rationale thereof) in Levy v. Louisiana through The Charity Hospital of Louisiana at New Orleans Board of Administrators et al., 391 U. S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 and its companion holding in Glona v. American Guarantee and Liability Insurance Company et al., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441.
The Levy suit, brought in a Lousiana district court, was on behalf of several illegitimate children for damages (not workmen's compensation) for the wrongful death of their mother. The Glona tort action was filed by a mother in Federal District Court for the wrongful death of her illegitimate child. Both cases were based *569 on Article 2315 of the Louisiana Civil Code which, by interpretation of this court, permits recovery for wrongful death by legitimate relatives, but not when the relationship is illegitimate. The Court of Appeal, Fourth Circuit, denied recovery to the Levy offspring (192 So.2d 193) and we denied certiorari (250 La. 25, 193 So.2d 530). The same result was reached in the Federal Court of Appeal (Fifth Circuit) in Glona, 379 F.2d 545. Thereafter, both cases were argued together in the United States Supreme Court, and were reversed.
In each of those cases it was found by the lower court that the Louisiana law involved denies recovery for an illegitimate child, whether acknowledged or not (or to such child's parents), even though no legitimate children or other heirs standing in a legal family relationship survived to claim damages in the tort action established by Civil Code Article 2315. In other words, all such persons were absolutely excluded from the right to claim for the wrongful death. As the United States Supreme Court said in Levy, insofar as that action is concerned, they are considered as "non persons".
Following a rendition of those judgments, a contention such as is made by Willie Mae Weber here (and based on Levy and Glona), was offered in Succession of Vincent, La.App., 229 So.2d 449, where an illegitimate, formally acknowledge child sought to share in her father's succession on the same basis as his legitimate child. She stated that "the cited Louisiana inheritance statutes unconstitutionally violate equal protection and due process guarantees, since they deny an illegitimate child the right to inherit solely because of the illegitimacy." [We might observe here that the laws referred to do not deny the acknowledged illegitimate child (as it was there) the right to inherit. They merely place the right of inheritance behind that of the legitimate child (and other legal relatives). See Articles 219, 202 and 206 of the Louisiana Revised Civil Code. To such extent those laws are similar to the compensation statute with which we are presently dealing, except that the latter places legally acknowledged illegitimate children on a par with legitimate children and puts unacknowledged, illegitimate children in an inferior classification, so that they can recover only if there are no persons in the more favored classifications who are entitled to the maximum compensation.]
In Succession of Vincent, supra, in declining to accept the alleged rationale of Levy and Glona as being applicable to such distinctions between legitimate and illegitimate relatives in all cases, the Louisiana Court of Appeal said: "This reasoning is persuasive. Nevertheless, we do not accept the holding of Levy and Glona as deciding more than that wrongful death enactments create an unreasonable exemption from tort liability by allowing illegitimacy to bar recovery of tort damages otherwise due. * * *" (emphasis ours)
We denied certiorari, stating that the judgment was correct. 255 La. 480, 231 So.2d 395.
We are of the opinion that the statement by the Louisiana Court of Appeal correctly sets forth the limited rationale of the federal opinions. Thus, in Levy the United States Supreme Court particularly observed that "In applying the Equal Protection Clause to social and economic legislation, we give great latitude to the legislature in making classifications." And, although the latter court did refer to the "intimate, filial relationship between a child and his own mother", it followed such reference with these observations: "* * * When the child's claim of damages for loss of his mother is in issue, why, in terms of `equal protection,' should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service
*570 Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?
"Legitimacy or illegitimacy of birth has no relation to the nature of the wrong allegedly inflicted on the mother. * * *" (emphasis ours)
Again, in Glona the court stated: "* * * A law which creates an open season on illegitimates in the area of automobile accidents gives a windfall to tortfeasors. * * *" (emphasis ours)
There is nothing whatsoever in either of those United States Supreme Court opinions that would compel the conclusion in compensation cases that a state may not make a distinction between legitimate and illegitimate children which would protect legitimate family relationships but permit recovery by illegitimates in the absence of the former. The circumstances of those decisions did not require a holding on the issue of the right of an illegitimate child as opposed to a legitimate one, and we do not find anything in the language of the court which would bear on such a contest.
Unlike Louisiana Civil Code Article 2315, our compensation law does not treat illegitimate children as "non persons" (as the United States Supreme Court in Levy held that the Article does); the acknowledged illegitimate child is placed on a par with legitimate children; the unacknowledged illegitimate child is not denied a right to recover compensation, he being merely relegated to a less favorable position as are other dependent relatives such as parents; no "wrong" has been inflicted on the deceased father by the employer from whom compensation is here sought; and no tort feasor goes free because of the law.
For ourselves, we find nothing invidious in the distinction made in the compensation statute which would protect such legally recognized family relationships, anymore than the preference given legitimate dependent children (even illegitimate ones when they are duly acknowledged) over dependent parents. We think that such classification is permitted to the state legislature in dealing with social and economic problems, and that the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution creates no barrier to it as contained in such statute.
Because of this conclusion that they are inapplicable, we find it unnecessary to determine whether the Levy and Glona decisions would be retroactively applied to the substantive law of this state, such having been the basis for the Court of Appeal decision in this cause.
For the reasons assigned the judgment of the Court of Appeal is affirmed.
SANDERS, Justice (dissenting).
Under the holding of the United States Supreme Court in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), discriminatory treatment of dependent illegitimate children for workmen's compensation benefits is no longer constitutionally permissible. Such children must be accorded rights equal to those of legitimate children.
For the reasons fully set forth by Mr. Justice Barham, I respectfully dissent.
BARHAM, Justice (dissenting).
When the employee Stokes died from an injury suffered in the course and scope of his employment, he had living in the home with him and dependent upon him for their support and livelihood four legitimate minor children, from whose mother he was separated but not divorced, and one unacknowledged illegitimate minor born of his open adulterous relationship with Willie Mae Weber. A second illegitimate child of this latter relationship was born posthumously. There is no question that the illegitimate minors were not only unacknowledged but unacknowledgeable under our law. However, it must be conceded that *571 the deceased and Willie Mae Weber lived together in a relationship which, though adulterous, was stable, open, and familial. The legitimate and the illegitimate occupied a similar status of dependency upon their deceased father.
The four legitimate minor children have recovered in tort an amount in excess of the workmen's compensation benefits which would be paid to all dependents, and the employer would be entitled to recover (if it had paid compensation) from the damages collected from the tort feasor an amount equal to the compensation benefits. The legitimate children have therefore exhausted the workmen's compensation benefits.
We are here confronted with the question of whether a dependent unacknowledged illegitimate child and a posthumous illegitimate child have, under our statute, claims for workmen's compensation against the employer which are to be equated with the claims of the legitimate children, or whether the illegitimates' claims are deferred so that they may recover only if there is a residue after the preferred claims enumerated in the statute are satisfied.
In Perkins v. Brownell-Drews Lumber Co., 147 La. 337, 84 So. 894 (1920), our court in a half-page opinion brushed aside the claim of unacknowledged illegitimates to any workmen's compensation benefits. In Barranco v. Davis, 175 La. 35, 142 So. 844 (1932), this court again refused to allow dependent unacknowledged illegitimate children any benefits under the Workmen's Compensation Act, and in Beard v. Rickert Rice Mills, 185 La. 55, 168 So. 492 (1936), once more this court under strict construction denied recovery to an unacknowledged illegitimate grandchild dependent. In Archibald v. Employers' Liability Assur. Corporation, 202 La. 89, 11 So.2d 492 (1942), however, this court recognized the socioeconomic purpose of the statute under consideration, the obligation to liberally construe it, and the proposition that the Legislature intended to allow compensation to those who were dependent upon the employee for support. The court specifically distinguished Beard v. Rickert Rice Mills, supra, but its method of differentiation as well as its conclusion forecast the cases to come which were to break the barrier against the right of the unacknowledged illegitimate to recover workmen's compensation benefits. Then in Thompson v. Vestal Lumber & Mfg. Co., 208 La. 83, 22 So.2d 842 (1945) on rehearing and without dissent this court held that although unacknowledged illegitimate children were not "children" as defined by the Workmen's Compensation Act, they were "legal dependents" who were members of the family of the employee under the act and entitled to present a claim for compensation.
In Patin v. T. L. James & Co., 218 La. 949, 51 So.2d 586 (1951), this court held that the existence of a preferred partial dependent did not exclude the claim of a wholly dependent member of a deferred group. As noted by Professor Wex S. Malone, 12 La.L.Rev. 150, 154, that case could very well have been the forewarning that there would no longer be a distinction of preferred and deferred classifications. In Williams v. Jahncke Service, 55 So.2d 668 (La.App.Orl.1951), the Court of Appeal held that although there was a surviving widow, a totally dependent illegitimate child of the deceased employee was entitled to 32½ per cent of the weekly wages of the deceased. In Caddo Contracting Co. v. Johnson, 222 La. 796, 64 So.2d 177 (1953), the Supreme Court allowed three minor unacknowledged illegitimate children of the deceased employee to recover the difference between the compensation allowed to the childless widow and the maximum compensation.
A review of this jurisprudence shows a definite trend. Under our original construction an unacknowledged illegitimate child was without any right under workmen's compensation. Then we took the important step of allowing the unacknowledged illegitimate child compensation in a *572 deferred classification if there were no members of the preferred class. Now the established practice of this court is to look toward a determination of the nature and extent of dependency rather than the nature of the legal relationship, so that the illegitimate child is allowed to recover fully in workmen's compensation, with only the limitation that the illegitimate cannot impinge upon the claims of members of a preferred class under R.S. 23:1232. The jurisprudence has undoubtedly concluded that the basic legislative intendment in this regard is to be found under R.S. 23:1231dependencyrather than under the relationship classifications of R.S. 23:1232 which have more validity in the law of inheritance and real rights, and even in delictual law, than in purely social legislation.
From the line of cases and the obvious trend indicated by them, it would appear that this court, by according predominance to R.S. 23:1231, continuing our liberal construction of the Workmen's Compensation Act, and applying our own Constitution, Article 1, Sections 2 and 6, could have eventually reached the result now sought by the plaintiffs without resorting to the federal constitutional pronouncement in Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436. That case held that failure to include dependent familial illegitimate children within the classification of "child" under Civil Code Article 2315, our wrongful death action, was invidious discrimination.
Compensation law is social law designed to make an employee's inability to produce income because of an employment-associated injury an element of the cost of production of goods and services, to be paid by the employer and passed on to the public in the purchase price of the goods and services. The Legislature sought for and found in the compensation law the source of financial protection for those who were dependent upon the employee and his income which was terminated or adversely affected because of injury in the course of employment. This law is societal structuring of welfare contribution from the public through a producer-consumer relationship rather than through the usual State-taxpayer relationship. As noted in a Comment, 28 La.L.Rev. 110, legislative bodies in creating and courts in applying socio-economic legislation which provides benefits to children "contingent upon the father's membership in a given class or the father having otherwise earned the benefit" have generally disregarded the distinction between legitimates and illegitimates. The State owes every child, legitimate or illegitimate, the same duty, and when the State adopts legislation to relieve itself of the support of children, a classification which prefers legitimate over illegitimate appears to be unwarranted.
While we held in the remand of Levy v. State Through Charity Hospital of Louisiana, 253 La. 73, 216 So.2d 818, that Article 2315 was sui generis, our opinion indicates that this court did not believe that article to partake of the nature of social legislation above described. Our delictual article, as we noted there, has always been construed strictly. It is not entitled to the liberal interpretation given to social legislation such as workmen's compensation. Although this court, at least in majority if not in unanimity, disagreed with the United States Supreme Court's finding of invidious discrimination in the inclusion of only legitimates within our definition of "child" under Article 2315, we were required to accept that court's ruling, and we followed its edict.
While I still strongly adhere to the principle underlying our opinion on remand in that case, which was that the United States Supreme Court decision did not and could not affect our Civil Code concepts of marital relationships, parent and child, and inheritance, I find it would be a legal incongruity to define "child" under Civil Code Article 2315 to include illegitimates and at the same time hold that "child" under R.S. 23:1021 does not include unacknowledged illegitimate children.
*573 If distinction between legitimate and illegitimate children is invidious discrimination under the special rights conferred by Civil Code Article 2315 for wrongful death, which is not purely social legislation and which we have repeatedly stated must be construed strictly, undoubtedly it is invidious discrimination to differentiate between the legitimate and the unacknowledged illegitimate child under the Workmen's Compensation Act, which is purely social legislation. So to hold is not to extend Levy. It is rather to make what I believe to be the only logical and reasonable legal conclusion within the rule of Levy. It is a conclusion that we may have preferred the Legislature to furnish Under Levy there is no alternative. We are required to exercise the judicial function and make this conclusion without awaiting legislative approval.
In answer to the contention that Levy is not to be applied retroactively, consideration must be given to the great difference between the effect of retroactive holdings in civil and in criminal law. In criminal law retroactivity gives rise to post-conviction remedies, whereas in civil cases final judgments are not disturbed. In civil matters decisions of the court are, with their very pronouncements, the applicable law for future determinations though those determinations are concerned with past occurrences. In Thomas v. Matthews Lumber Co., 253 La. 1, 215 So.2d 832, Mr. Justice McCaleb and I concurred, expressing the view that Levy was controlling and thereby giving it retroactive application. Additionally, many courts throughout the country have applied Levy retroactively without even a consideration that the rule may be only prospective in effect. The Fifth Circuit Court of Appeals in Hebert v. Petroleum Pipe Inspectors, Inc., 396 F.2d 237, (decided even before Levy became a final judgment), by per curiam which simply cited and relied upon the Levy case reversed a Louisiana federal district court holding that illegitimate children were not "children" under the Jones Act.
Illegitimate children can no longer be considered simply members of a dependent class relegated to only a deferred exercise of their workmen's compensation claims. Whether we would have eventually reached the determination required of us here, legislatively or otherwise, from within the borders of this state, we are now forced to make this abrupt conclusion by reason of the United States Supreme Court pronouncement in Levy v. Louisiana. The principle laid down in that case is the law of Louisiana, entitled to all the deference and consideration which this courtregardless of personal individual views of its wisdommust accord every other law of this state. In fact, the United States Supreme Court has made this a constitutional fundamental, and we are required, where it is appropriate as here, to scrutinize other laws in light of this essential rule. This court has no alternative but to depart from the preferential treatment heretofore given under our workmen's compensation law to legitimate children over illegitimate children (including the posthumous) who though not legally acknowledged are in fact acknowledged, are held out to be the children of the deceased employee, are members of that employee's family, and are dependent upon his income for subsistence.
I respectfully dissent.
TATE, J., concurs.
Rehearing denied.
SANDERS, BARHAM and TATE, JJ., dissent from denial of rehearing.